John J. EAKIN, Individually, and d/b/a Cypress Helicopter Company, Appellant,

v.

Howard ACOSTA and Myron Papadakis, Appellees.

No. 04–99–00575–CV.

Court of Appeals of Texas, San Antonio.

Feb. 9, 2000.

Rehearing Overruled May 25, 2000.

R. Matt Lair, Ron A. Sprague, Gendry & Sprague, P.C., San Antonio, for Appellant.

Richard J. Reynolds, III, Vaughan E. Waters, Thornton, Summers, Biechlin, Dunham & Brown, L.C., Corpus Christi, for Appellee.

Sitting: PHIL HARDBERGER, Chief Justice, CATHERINE STONE, Justice, PAUL W. GREEN, Justice.

## OPINION

Opinion by: CATHERINE STONE, Justice.

This appeal raises the issue of whether a Florida lawyer representing a Texas resident in a Florida lawsuit is subject to personal jurisdiction in Texas. The trial court said no, and entered an order sustaining the special appearance of the Florida lawyer, appellee Howard Acosta. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.04(a)(7) (Vernon Supp.2000). Because we agree that Acosta had insufficient contacts with Texas to justify the exercise of personal jurisdiction, we affirm the trial court's order.

### FACTUAL AND PROCEDURAL BACKGROUND

In 1996, appellant John J. Eakin ("Eakin") solicited the legal assistance of Acosta to represent him in a personal injury lawsuit pending in Florida. The Florida suit arose from a helicopter crash which occurred in Louisiana in 1984. Following several long-distance telephone calls between Eakin in Texas and Acosta in Florida, the parties entered into a written contract of representation. By the terms of the contract Acosta and Myron P. Papadakis were to provide Eakin with professional legal services in his underlying personal injury claim, with Acosta to receive a 20% contingent fee and Papadakis to receive a 10% contingent fee. An addendum to the contract specified that the firm of Papadakis, Allman and Pinney would be employed as consulting attorneys to Acosta. The addendum further provided:

> Myron P. Papadakis and John Rusty Allman will work subservient to the decision making control of lead attorney Howard Acosta in this matter. It is understood that Howard Acosta will be the lead attorney and Papadakis and Allman will support him in this case. All legal decisions and strategies will [be] Howard Acostas' [sic].

Although not mentioned in the addendum, the record reflects that Papadakis is licensed in Texas and Allman is licensed in Texas and California. Their firm maintains offices in both states.

Over the course of the litigation, Eakin traveled to Florida—at no time did Acosta ever travel to Texas. The case proceeded to settlement in Florida; however, a dispute arose between Eakin and Acosta about attorney's fees. Eakin filed suit for legal malpractice against Acosta in Texas, claiming Acosta availed himself of Texas jurisdiction by making representations to Eakin via long-distance telephone calls, forwarding the contract of representation to Eakin in Texas, and entering into a joint venture with Papadakis in Texas. The trial court disagreed with Eakin's contentions and granted Acosta's special appearance, from which Eakin now appeals.[1]

### STANDARD OF REVIEW

On interlocutory appeal, we review the trial court's grant or denial of a special appearance for an abuse of discretion. *Magnolia Gas Co. v. Knight Equip.*

---

1. Myron Papadakis, despite being named as a party in this case, is not appealing the trial court's order. Accordingly, the substance of the appeal relates only to appellee Howard Acosta.

& *Mfg. Corp,* 994 S.W.2d 684, 689 (Tex. App.-San Antonio 1998, no pet.). Under this standard, we will not disturb the trial court's resolution of factual issues absent a showing of arbitrariness or unreasonableness. *Walker v. Packer,* 827 S.W.2d 833, 839–40 (Tex.1992). We review the trial court's legal conclusions *de novo,* and we will not disturb those legal conclusions absent a showing of misapplication of the law. *Magnolia Gas,* 994 S.W.2d at 689. Although Eakin requested findings of fact and conclusions of law, the trial court entered none. We therefore presume that all questions of fact support the judgment. *Zac Smith & Co. v. Otis Elevator Co.,* 734 S.W.2d 662, 666 (Tex.1987). However, because the appellate record contains a reporter's record, these presumed fact findings are inconclusive. *Id.*

## PERSONAL JURISDICTION

A Texas court may exercise jurisdiction over a non-resident if:(1) the Texas long-arm statute authorizes the exercise of jurisdiction; and (2) the exercise of jurisdiction comports with the state and federal constitutional guarantees of due process. *Guardian Royal Exch. Assur., Ltd. v. English China,* 815 S.W.2d 223, 226 (Tex.1991). The Texas long-arm statute authorizes the exercise of jurisdiction over nonresident defendants "doing business" in Texas. TEX. CIV. PRAC. & REM.CODE ANN. § 17.042 (Vernon 1997). Although not an exhaustive list, several acts enumerated in the statute constitute "doing business." *Disney Enterprises, Inc. v. Esprit Finance, Inc.,* 981 S.W.2d 25, 29 (Tex.App.-San Antonio 1998, pet. dism'd w.o.j.). Since the "broad language" of the long-arm statute permits an expansive reach limited only by federal constitutional requirements of due process, *Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex.1990), we need only consider whether it is consistent with federal constitutional requirements of due process for a Texas court to exercise personal jurisdiction over Acosta.

Under the federal constitutional test of due process, a state may assert personal jurisdiction over a nonresident defendant if: (1) the defendant has purposefully established minimum contacts with the forum state; and (2) the exercise of jurisdiction comports with fair play and substantial justice. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475–76, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *National Industrial Sand Assoc. v. Gibson,* 897 S.W.2d 769, 772 (Tex.1995). When applying the minimum contacts analysis, we focus on Acosta's intentional activities and expectations in deciding whether it is proper to call him before a Texas court. *See World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291–292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). To establish minimum contacts with Texas, Acosta must have purposefully availed himself of the privilege of conducting activities within the state, thereby receiving the benefit and protection of Texas laws. *See Burger King,* 471 U.S. at 474–75, 105 S.Ct. 2174. His activities must be substantial enough to justify a conclusion that Acosta reasonably anticipated being called into a Texas court. *Id.* at 475, 105 S.Ct. 2174. The presence of sufficient minimum contacts may support either general or specific jurisdiction. *Guardian Royal Exch.,* 815 S.W.2d at 227. Eakin contends that both types of jurisdiction are established in the record. We disagree.

### 1. General Jurisdiction

General jurisdiction arises when a nonresident defendant engages in continuous and systematic contacts with the forum state. *Guardian Royal Exch.,* 815 S.W.2d at 230. The events which give rise to the cause of action need not occur in the forum state. *CSR Ltd. v. Link,* 925 S.W.2d 591, 594 (Tex.1996). However, the defendant's activities within the forum state must be substantial. *Schlobohm,* 784 S.W.2d at 357.

Eakin contends that Acosta has engaged in contact with Texas since 1990

by maintaining a license to practice before the United States District Court for the Western District of Texas. Eakin presented affidavit testimony indicating that Acosta had been an attorney of record in at least one case that was litigated in the United States District Court for the Western District of Texas—San Antonio Division. Eakin classifies this activity as continuous and systematic for purposes of general jurisdiction. Acosta disputes this claim, contending the federal district court in Texas granted him special permission to represent a party on the grounds that Acosta was a member in good standing of the Florida Bar. This representation took place four years prior to the instant case and Acosta made no efforts to acquire any client base in Texas.

General jurisdiction requires a showing of substantial activities in Texas by the nonresident defendant. *Guardian Royal Exch.*, 815 S.W.2d at 230. A nonresident lawyer's one-time representation of a client in a federal district court located in Texas does not rise to the level of substantial activity. It is undisputed that Acosta is licensed as an attorney in Florida, but not in Texas. It is not unusual under such circumstances for a federal court to extend licensure to a nonresident so that the attorney may proceed in federal court. *See* United States District Court for the Western District of Texas, Local Rule AT–1 (1999). Further, while Acosta's license in the Western District of Texas may have remained current (and there is no evidence one way or the other on this issue), Acosta specifically denied any activity designed to develop a client base in Texas. Indeed, there is no evidence that Acosta ever utilized the license granted to him by the Western District of Texas other than in the one case in which the license was originally granted. Thus, the mere fact that Acosta is or was licensed in a Texas federal court does not establish the "continuous and systematic contacts" needed to support general jurisdiction. *See Guardian Royal Exch.*, 815 S.W.2d at 230. Accordingly, the trial court could have prop-

erly determined that general jurisdiction has not been established.

**2. Specific Jurisdiction**

 Specific jurisdiction may be asserted if the cause of action arises out of or relates to the nonresident defendant's contact with the forum state. *Id.* The contact between the defendant and the forum state must have occurred as a result of the defendant's purposeful conduct, and not because of the plaintiff's unilateral activity. *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 417, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Texas courts exercise specific jurisdiction over a defendant if the defendant's activities in Texas are isolated or disjointed, but the cause of action arises from those activities. *Schlobohm,* 784 S.W.2d at 357; *Zac Smith & Co. v. Otis Elevator Co.,* 734 S.W.2d 662, 663 (Tex.1987).

 Eakin again claims that Acosta's prior representation of a party in federal district court in Texas is a factor to consider in determining that specific jurisdiction is proper. We disagree. The previous Texas litigation in which Acosta was involved has no connection to Eakin's current malpractice claim against Acosta. Eakin's cause of action does not arise from Acosta's previous appearance in federal court in Texas. Accordingly, this "contact" with Texas cannot provide a basis for asserting specific jurisdiction. *See Guardian Royal Exch.,* 815 S.W.2d at 230.

 Eakin also claims specific jurisdiction is established because Acosta called Eakin in Texas to discuss the case, and during these long-distance telephone calls Acosta allegedly misrepresented his level of experience as an aviation litigator and the degree of fidelity and loyalty he would extend to Eakin. These misrepresentations are the basis of breach of warranty and deceptive trade practice allegations in Eakin's petition. Eakin thus claims the telephone calls are contacts with Texas that form the very basis of his cause of

action against Acosta, thereby giving rise to specific jurisdiction. Eakin's claim fails for two reasons.

First, long-distance telephone calls to the forum state do not, in and of themselves, provide a sufficient contact to authorize the exercise of jurisdiction in the forum state. *See Klenk v. Bustamante*, 993 S.W.2d 677, 682 (Tex.App.-San Antonio 1998, no pet.). Even when coupled with written correspondence and isolated trips to the forum state, long-distance telephone calls are generally not considered purposeful activities directed toward residents of the forum state. *See Id; Greeno v. Killebrew*, 9 S.W.3d 284, 286–87 (Tex.App.-San Antonio 1999, no pet. h.) (recognizing that without more evidence of substantial contact, telephone calls and correspondence activities are generally insufficient to confer personal jurisdiction on a nonresident defendant).

Second, regardless of the labels Eakin attaches to his claims against Acosta, his suit is one for professional negligence. *See Willis v. Maverick*, 760 S.W.2d 642, 644 (Tex.1988)(stating that whatever label is placed upon the action, a claim for legal malpractice is inherently a tort action); *Kahlig v. Boyd*, 980 S.W.2d 685, 689 (Tex. App.-San Antonio 1998 writ history)(recognizing that irrespective of label, claims based upon a lawyer's negligence and failure to exercise the care and diligence of an ordinary lawyer constitute legal malpractice); *Burnap v. Linnartz*, 914 S.W.2d 142, 148 (Tex.App.-San Antonio, 1995, writ denied)(noting that a legal malpractice claim is essentially a professional negligence cause of action). Eakin's claim against Acosta is based on Acosta's alleged failure to prepare for trial, call appropriate witnesses, and research Louisiana law regarding workers' compensation liens. In the absence of fraud allegations, Eakin's suit is simply one for legal malpractice. Acosta's uncontroverted affidavit testimony establishes that all legal work performed by him was performed in Florida. Accordingly, the allegations of misrepresentations made

during telephone calls to Texas do not establish a basis for jurisdiction.

Eakin claims the fee agreement addendum which provides that a Texas lawyer will provide services "subservient to" a nonresident lawyer distinguishes this case from other cases. It is true that no other reported case presents facts like those displayed in this case. Regardless of the novel fact situation presented, our inquiry remains the same: does the record establish that the trial court could reasonably have reached only one conclusion. *See Walker v. Packer*, 827 S.W.2d at 841.

We cannot say that the only conclusion the trial court could reasonably have reached was that Acosta performed legal services in Texas as a result of his relationship with Papadakis. The fee agreement addendum states that Papadakis would be subject to the "decision making control" of Acosta and that all "legal decisions and strategies" would be made by Acosta. There is no evidence, however, that Acosta ever exercised any control over Papadakis or that he made any legal decisions or formed any strategies that affected the work performed by Papadakis. Certainly there is no evidence that Acosta ever exercised control or formed legal decisions or strategies *in Texas*. The only evidence is that Acosta never "perform[ed] any purposeful act in the State of Texas" during his representation of Eakin. Further, while the record contains a billing statement from Papadakis for expenses incurred in Eakin's case, the only work reflected in the statement that was clearly performed in Texas was attendance at a deposition in Dallas. Other work was performed in California and Florida, and telephone calls and mailings were made from undisclosed locations. Based upon this record, we cannot say the trial court abused its discretion in granting Acosta's special appearance.

In light of our holding that no minimum contacts exist to hale Acosta into Texas court, we dispense with any further analysis into the second prong of due process,

namely whether the exercise of jurisdiction comports with fair play and substantial justice. *See Klenk*, 993 S.W.2d at 683. Accordingly, we affirm the trial court's order sustaining Acosta's special appearance.