**JOE GUERRA EXXON STATION,**
Appellant,

v.

**MICHELIN TYRE PUBLIC LIMITED COMPANY, Appellee.**

No. 04–00–00049–CV.

Court of Appeals of Texas,
San Antonio.

Oct. 25, 2000.

384

Kevin D. Jewell, Robert H. Bateman, Teresa J. Waldrop, Magenheim Bateman & Helfand, P.L.L.C., Houston, Marcel C. Notzon, III, Alvarez & Notzon, L.L.P., Laredo, for Appellant.

Eustorgio Perez, Vela, Perez and Pena (An Association), Laredo, James B. Ragan, James B. Ragan, P.C., Corpus Christi, Ju-

lio A. Garcia, Law Offices of Julio A. Garcia, Laredo, Tracey M. Robertson, Michael W. Youtt, Gregory K. Evans, King & Spalding, Joseph W. Gagnon, Mark Ramsey, Ramsey & Murray, P.C., Houston, Laticia L. Martinez, Baldemar Garcia, Jr., Donato D. Ramos, Person, Whitworth, Ramos, Borchers & Morales, George Russell Meurer, Kazen, Meurer & Perez, Laredo, for Appellee.

Sitting: PHIL HARDBERGER, Chief Justice, PAUL W. GREEN, Justice, KAREN ANGELINI, Justice.

## OPINION

Opinion by PAUL W. GREEN, Justice.

This accelerated appeal arises from the trial court's grant of the special appearance of Michelin Tyre Public Limited Company (Michelin Tyre). *See* TEX.CIV. PRAC. & REM.CODE ANN. § 51.014(a)(7) (Vernon Supp.2000). Because we agree the trial court lacked personal jurisdiction over Michelin Tyre, we affirm the trial court's order granting the special appearance and dismissing Michelin Tyre from the lawsuit.

### Factual and Procedural Background

Alma Rosa Delgado Cardona and Liliana Elizabeth Perez Cerda were passengers in a Range Rover automobile driven by Eduardo Jaime Gonzalez when all three were fatally injured in a one car accident allegedly caused by a defective tire. Relatives of Cardona, Cerda, and Gonzalez, plaintiffs in the suit below, filed suit against Gunn Oldsmobile, Inc., (Gunn Olds), the dealer that sold Gonzalez the car, and Joe Guerra Exxon Station, a service station that allegedly repaired the tire shortly before the accident. The plaintiffs also sued Michelin North America, Inc. (MNA), its predecessor, Michelin Tire Corporation (MTC), and Michelin Tyre. Gunn Olds and Joe Guerra Exxon filed cross claims for indemnity against MNA, MTC, and Michelin Tyre.

Michelin Tyre admits it manufactured the tire in question. Michelin Tyre is an English corporation, manufacturing tires exclusively in England and the United Kingdom. The tire at issue was sold to Land Rover in England and placed on the Range Rover vehicle. Land Rover then distributed the vehicle to the United States through Gunn Olds.

The trial court made findings of fact, in relevant part, as follows:

6. Michelin Tyre is not and has never been a resident of Texas, and it neither has maintained, nor has been required to maintain, a registered agent for service of process in Texas. Michelin Tyre has never paid taxes in Texas. Michelin Tyre has never owned, leased, or used any property in the State of Texas. Michelin Tyre has never maintained a place of business in Texas, either directly or through an agent or other person or entity. Michelin Tyre has never maintained any employees, servants, or agents in Texas. Michelin Tyre does not maintain any offices, facilities, or places of business in Texas.

7. Michelin Tyre has never been authorized to do business in the State of Texas. Michelin Tyre has never done any business, trade, or commerce in the State of Texas. Michelin Tyre has never solicited business in the State of Texas. Michelin Tyre has never served any market in Texas. Michelin Tyre has never sold or delivered goods to Texas, has never entered into a contract in Texas, has never sold, supplied, distributed, marketed, promoted, or advertised tires or any other product in or to Texas. Michelin Tyre has also never participated in the sale, supply, distribution, marketing, promotion, or advertisement of tires or any other product in or to Texas. Michelin Tyre did not create, control or employ any distribution system that brought any of its products to the State of Texas.

8. The subject tire was not designed or manufactured specifically for the Texas market. Michelin Tyre does not design or manufacture any tire specifically for the Texas market.

9. Michelin Tyre has never had any financial dealings in Texas.

10. Michelin Tyre has never initiated any litigation or other legal proceeding in Texas.

11. Neither Michelin Tyre nor any representative of Michelin Tyre has otherwise purposely developed any connection with the State of Texas nor directed any activity toward the State of Texas nor has it availed itself of the benefits or protections of Texas law.

. . . . .

13. Michelin Tyre has always manufactured its tires exclusively in the United Kingdom. Land Rover manufactures Range Rover vehicles in England. Michelin Tyre sells tires to Land Rover to be used as original equipment tires on Land Rover vehicles, and all of these sales occur in the United Kingdom. The only way that a Michelin Tyre tire could be present in the United States is if some separate person or entity acquired it from Michelin Tyre and thereafter caused it to be brought to the United States.

14. At the time that Michelin Tyre sells tires to Land Rover, Land Rover takes title to the tires with Michelin Tyre relinquishing all control of, or ownership or other interest in, the tires at that time. After Michelin Tyre sells tires to Land Rover, neither Michelin Tyre nor any representative as agent of Michelin Tyre has control over what happens to any particular tire, or where Land Rover decides to send that tire, or where that tire is actually sent. Michelin Tyre does not control or participate in any way in the actual shipment, distribution, advertising, marketing, promotion, or sale of any Land Rover product in Texas. Michelin Tyre has no knowledge of where Land Rover plans to send particular tires, or what happens to those tires after they are sold, or where Land Rover decides to send those tires, or where those tires are actually sent.

The trial court also found that Michelin Tyre is a completely separate and distinct company from MNA, MTC, or Land Rover. MNA is the Michelin affiliate company responsible for manufacturing, selling, marketing, and distributing Michelin-brand tires in the United States. Finally, the trial court found that defending the case in Texas would be very burdensome and difficult for Michelin Tyre because of the distance involved and Michelin Tyre's lack of familiarity with the laws of the State.

Based on its findings of fact, the trial court concluded that Michelin Tyre lacked the minimum requisite contacts with the State of Texas for the court to exercise general or specific personal jurisdiction. The trial court further held that exercising jurisdiction over Michelin Tyre would offend traditional notions of fair play and substantial justice and granted the special appearance. Joe Guerra Exxon appeals that decision.

## Scope and Standard of Review

A nonresident defendant bears the burden to negate all bases of personal jurisdiction to prevail in a special appearance. *Magnolia Gas Co. v. Knight Equip. & Mfg. Corp.*, 994 S.W.2d 684, 689 (Tex. App.—San Antonio 1998, no pet.). This court has consistently held that we review the trial court's grant or denial of a special appearance for abuse of discretion.[1] *Eakin v. Acosta*, 21 S.W.3d 405, 407–08 (Tex. App.—San Antonio 2000, no pet.) (citing

---

1. We have suggested that a better approach may be to review the trial court's order *de novo*, especially in cases like the present where no evidence is presented at the hearing; therefore, the trial court had no more information than is contained in the record on appeal. *See Long Distance Int'l, Inc. v. Telefonos de Mexico, S.A.*, 18 S.W.3d 706, 711 n. 3 (Tex.App.—San Antonio 2000, no pet. h.); *Transportes Aereos de Coahuila, S.A. v. Falcon*, 5 S.W.3d 712, 717 n. 3 (Tex.App.—San Antonio 1999, pet. denied). However, as it makes no difference to the outcome in this case, we again decline to address a change in the standard of review.

*Magnolia Gas,* 994 S.W.2d at 689)). Under the abuse of discretion standard, we give deference to the trial court's resolution of factual issues and will not disturb its decision absent a showing of arbitrariness or unreasonableness. *Magnolia Gas,* 994 S.W.2d at 689. However, we review the trial court's legal conclusions *de novo,* and we will not disturb those conclusions absent a misapplication of the law. *Eakin,* 21 S.W.3d at 408.

## Jurisdiction

■ A Texas court may not take personal jurisdiction over a nonresident defendant unless the defendant has some minimum, purposeful contacts with the state and the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice. *CMMC v. Salinas,* 929 S.W.2d 435, 437 (Tex.1996). Under the minimum contacts requirement of this analysis, we must determine whether Michelin Tyre purposefully availed itself of the privilege of conducting activities within the state, thus enjoying the benefits and protections of state law. *See Magnolia Gas,* 994 S.W.2d at 690. Minimum contacts may give rise to either general or specific jurisdiction. *Id.* Joe Guerra Exxon asserts Michelin Tyre has minimum contacts with the State of Texas without specifying whether those contacts justify a finding of general or specific jurisdiction. Accordingly, we examine the possible grounds for both.

■ General jurisdiction arises when systematic and continuous contacts tie the defendant to the forum state. *Id.* The trial court found Michelin Tyre had no contacts with the State of Texas. This finding is supported by the evidence in the record. Michelin Tyre does business exclusively in England and the United Kingdom. It does not have, and has never had, any assets, property, employees, representatives, or agents in Texas. It was not an abuse of discretion for the trial court to grant the special appearance based on a lack of general jurisdiction.

■ Specific jurisdiction exists when the cause of action arises out of, or relates to, the defendant's contacts with Texas. *LeBlanc v. Kyle,* 28 S.W.3d 99, 102–03 (Tex.App.—Texarkana 2000, no pet. h.); *Eakin,* 21 S.W.3d at 409; *Magnolia Gas,* 994 S.W.2d at 691. Joe Guerra Exxon argues Michelin Tyre has sufficient contacts with Texas because it knew its tires were being placed on automobiles that could be sold in Texas. Joe Guerra Exxon emphasizes that Michelin Tyre places the federal Department of Transportation (DOT) number on the sidewall of each tire. Joe Guerra Exxon claims that by complying with a United States regulation for identifying tires, Michelin Tyre purposefully directed its commercial activity at all states who have adopted the DOT regulations, including Texas. This argument follows the reasoning in *World–Wide Volkswagen Corp. v. Woodson* that a state may properly assert jurisdiction "over a corporation that deliver[s] its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *CMMC,* 929 S.W.2d at 437 (citing *World–Wide Volkswagen,* 444 U.S. 286, 297–98, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)).

■ The broad language of *World–Wide Volkswagen* has been limited by subsequent opinions. *See Asahi Metal Indus. v. Superior Ct. of Cal.,* 480 U.S. 102, 110–112, 107 S.Ct. 1026, 1031–1032, 94 L.Ed.2d 92 (1987). In *CMMC,* the Texas Supreme Court cited with approval the language of Justice O'Connor's opinion in *Asahi Metal Indus.*

[Some] courts have understood the Due Process Clause and the [ ] language in *World–Wide Volkswagen* to require the action of the defendant to be more purposefully directed at the forum State than the mere act of placing a product in the stream of commerce.... We now find this [ ] position to be consonant with the requirements of due process. The "substantial connection" between the de-

fendant and the forum State necessary for a finding of minimum contacts must come about by *an action of the defendant purposefully directed toward the forum State.*

*CMMC,* 929 S.W.2d at 438 (quoting *Asahi Metal Indus.,* 480 U.S. at 110–12, 107 S.Ct. 1026 (emphasis in original)). The Texas Supreme Court went on to suggest it "would follow Justice O'Connor's formulation of the stream-of-commerce rule in Texas." *Id.* at 440. Thus, merely placing a product in the stream of commerce, even with the knowledge the product may or will end up in the forum state is not sufficient to establish personal jurisdiction.

The placement of the DOT identifier on the tires does no more than allow Michelin Tyre's customer, Land Rover, to use the tires on vehicles sold in the United States, if Land Rover so chooses. At most, Michelin Tyre could foresee that some of the tires sold to Land Rover in England might end up in the United States. Foreseeability alone is insufficient to establish personal jurisdiction without some act purposefully directed toward selling or marketing the tires in the State of Texas. *CSR Ltd. v. Link,* 925 S.W.2d 591, 595–96 (Tex.1996). Because Michelin Tyre did not take some purposeful action to market, promote, or otherwise distribute its products in the State of Texas, the trial court did not abuse its discretion in granting Michelin Tyre's special appearance.

Because Michelin Tyre lacks minimum contacts with the State of Texas, the exercise of personal jurisdiction over this defendant would offend traditional notions of fair play and substantial justice. This is particularly true in the case of a foreign defendant "because of the unique and onerous burden placed upon a party to defend a suit in a foreign legal system." *See CMMC,* 929 S.W.2d at 440. Accordingly, we affirm the judgment of the trial court.