NUMBER 13-03-432-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG




STEPHEN E. JACKSON, ET AL.,                                        Appellants,

v.

JAMES L. KINCAID, JEFFREY T. HILLS,
AND TERRY M. THOMAS,                                                 Appellees.




On appeal from the 319th District Court
of Nueces County, Texas.




O P I N I O N

Before Chief Justice Valdez and Justices Yañez and Castillo
Opinion by Justice Castillo
       This is an interlocutory appeal from the trial court's orders granting the special
appearances of appellees James L. Kincaid, Jeffrey T. Hills, and Terry M. Thomas
(collectively, the "Lawyers").


 Appellants are Stephen E. Jackson, Bristol Resources
Holdings, Inc., Stephens Investment Company, and American Central Gas
Technologies Companies, Inc. (collectively, the "Appellants"). We reverse and
remand. 
I. BACKGROUND
         In September 1999, Jackson and co-principal Stephen Heyman held interests
in three Oklahoma-based entities: Bristol Resources Corporation, Bristol
Resources 1994 Acquisition Limited Partnership, and Bristol Resources Production
Company, L.L.C. (collectively, the "Bristol Entities"). Jackson and Heyman contacted
the law firm of Crowe & Dunlevy, P.C. for legal representation during the impending
insolvencies of the Bristol Entities. Crowe & Dunlevy is an Oklahoma-based law firm
with offices in Oklahoma City, Norman, and Tulsa. The Lawyers are Oklahoma
residents associated with Crowe & Dunlevy. 
         In March 2000, two lawsuits filed in Oklahoma alleged fraud and fiduciary
breaches against Jackson and Heyman. The litigation derailed a planned $52 million
sale of the Bristol Entities. Secured creditors of the Bristol Entities initiated involuntary
bankruptcy proceedings in the United States Bankruptcy Court for the Southern
District of Texas in Corpus Christi, Texas (the "Bristol Bankruptcy"). Crowe &
Dunlevy, through the Lawyers, represented Jackson and Heyman in the Bristol
Bankruptcy. 
         Alleging that the Lawyers and Crowe & Dunlevy engaged in conflicts of interest,
committed fraud and legal malpractice, were grossly negligent, and breached their
contractual and fiduciary duties during their legal representation in the Bristol
Bankruptcy, the Appellants filed this litigation. The Lawyers and Crowe & Dunlevy
each contested personal jurisdiction and filed special appearances. Crowe & Dunlevy
later withdrew its special appearance, entered a general appearance, and is not a party
to this appeal. The trial court granted the Lawyers' special appearances and dismissed
the claims against them for want of personal jurisdiction. The record does not contain
findings of fact or conclusions of law. This interlocutory appeal ensued. 
         In determining the question of personal jurisdiction, a trial court
frequently resolves questions of fact. Am. Type Culture Collection, Inc. v.
Coleman, 83 S.W.3d 801, 806 (Tex. 2002), cert. denied, 537 U.S. 1191 (2003). In
the absence of written findings of fact and conclusions of law, we imply fact findings
necessary to support a trial court's legal conclusions. See McConnell v. Attorney
Gen., 878 S.W.2d 281, 284 (Tex. App.–Corpus Christi 1994, no writ).  When the
appellate record includes the reporter and clerk's records, neither express nor implied
fact findings are conclusive and may be challenged for legal and factual sufficiency. 
Am. Type Culture Collection, 83 S.W.3d at 806; M.G.M. Grand Hotel v.
Castro, 8 S.W.3d 403, 408 (Tex. App.–Corpus Christi 1999, no pet.). 
         In separate issues addressed to the special appearances of each of the three
lawyers, the Appellants contend that the trial court erred as a matter of law
with respect to its legal conclusions. They also challenge the legal and factual
sufficiency of the evidence to support the trial court's implied findings of fact. Our
review of the parties' briefs indicates that they agree about the relevant facts but
disagree about their legal significance. We liberally construe the briefing rules. See
Tex. R. App. P. 38.9. We interpret the Appellants' issues as challenging the trial
court's legal conclusions in refusing to exercise personal jurisdiction over the Lawyers. 
See Tex. R. App. P. 38.1(e); see also Selectouch Corp. v. Perfect Starch,
Inc., 111 S.W.3d 830, 836 (Tex. App.–Dallas 2003, no pet. h.) (construing issue as
challenging both legal and factual sufficiency). 
 II. STANDARD AND SCOPE OF REVIEW
         We review a trial court's challenged conclusions of law as legal questions. BMC
Software Belg., N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002). Thus, we
review de novo a trial court's application of the law to the facts in
ruling on a special appearance. Am. Type Culture Collection, 83 S.W.3d at 806; Exito
Elecs. v. Trejo, 99 S.W.3d 360, 366 (Tex. App.–Corpus Christi 2003, pet. filed). In
other words, we determine the correctness of the trial court's legal conclusions. BMC
Software, 83 S.W.3d at 794. If we determine that a conclusion of law is not correct,
but the trial court rendered the proper judgment, the incorrect conclusion of law does
not require reversal. Id. Thus, in reviewing challenges to the trial court's conclusions
of law, we sustain the judgment on any legal theory supported by the evidence. In re
A.M., 101 S.W.3d 480, 484-85 (Tex. App.–Corpus Christi 2002, no pet.). We do
not reverse an incorrect conclusion of law if the findings of fact support a
correct legal theory. Id. at 485. We examine the entire record, not just the
evidence in support of the trial court's legal conclusion. Valsangiacomo v. Americana
Juice Imp., 35 S.W.3d 201, 205 (Tex. App.–Corpus Christi 2000, pet. dism'd w.o.j.)
("On appeal from a special appearance, we review all evidence in the record to
determine if the nonresident defendant negated all possible grounds for personal
jurisdiction."). 
III. SPECIAL-APPEARANCE BURDENS
         The plaintiff bears the initial burden of pleading allegations sufficient to
bring a nonresident defendant within the personal jurisdiction of the State of
Texas.  Am. Type Culture Collection, 83 S.W.3d at 807; Exito Elecs., 99 S.W.3d
at 366.  A nonresident defendant challenging a Texas court's personal jurisdiction
by special appearance must negate all jurisdictional bases. Am. Type Culture
Collection, 83 S.W.3d at 807; Exito Elecs., 99 S.W.3d at 366-67. In the absence
of sufficient personal-jurisdiction allegations by the plaintiff, the defendant meets its
burden of negating all potential bases of personal jurisdiction by presenting evidence
that it is a nonresident. Exito Elecs., 99 S.W.3d at 367. Once the defendant
produces credible evidence negating all bases of jurisdiction, the burden shifts back to
the plaintiff, who bears the ultimate burden to establish that the Texas court has
personal jurisdiction over the defendant. M.G.M. Grand Hotel, 8 S.W.3d at 408. 
         On appeal, the Lawyers contend that the Appellants did not meet their burden
of pleading allegations sufficient to establish the trial court's personal jurisdiction. No 
motion to quash appears in the record. Thus, the Lawyers waived any complaint that
the Appellants did not meet their pleading burden. See Exito Elecs., 99 S.W.3d
at 367 (citing Kawasaki Steel Corp. v. Middleton, 699 S.W.2d 199, 203 (Tex. 1985)
(per curiam)). Accordingly, we find that the burden shifted to the Lawyers to negate
all bases for the trial court's exercise of personal jurisdiction. See Exito
Elecs., 99 S.W.3d at 366-67. We turn to the record. 
IV. THE JURISDICTIONAL FACTS
         A trial court determines a special appearance by referring to the pleadings, any
stipulations made by and between the parties, any affidavits and attachments filed by
the parties, discovery, and any oral testimony. Tex. R. Civ. P. 120a; M.G.M. Grand
Hotel, 8 S.W.3d at 407. Both sides filed affidavits in connection with the personal-jurisdiction question. We have complete clerk's and court reporter's records from the
trial court. Accordingly, we include the affidavits, any discovery cited by the parties,
the clerk's record, and the court reporter's record within the record we review. See
M.G.M. Grand Hotel, 8 S.W.3d at 409. 
         Our review of the record as a whole reveals evidence of the following facts,
which the Lawyers do not dispute: 
•       By pro hac vice admission to the United States Bankruptcy Court for the
Southern District of Texas in Corpus Christi, each of the Lawyers appeared in
the Bristol Bankruptcy from September 18, 2000 through February 16, 2001
as counsel of record for Jackson and Heyman. Hills also appeared as counsel
of record for Appellant Bristol Resources Holdings, Inc. on court filings in the
Bristol Bankruptcy. Because of their expertise in bankruptcy matters, the
Lawyers did not secure the services of local counsel in Texas. 
•       At all relevant times, the Lawyers were employed as attorneys associated with
Crowe & Dunlevy and not as sole practitioners. 
•       Crowe & Dunlevy billed $248,877.25 in legal fees and $7,952.61 in expenses
for legal services rendered in connection with the Bristol Bankruptcy. Kincaid
billed approximately $100,000.00 for his services in the case. Hills billed
approximately $77,000.00. Thomas billed approximately $14,000.00. 
•       Each of the Lawyers performed legal services in Oklahoma in connection with
the Bristol Bankruptcy. 
•       In addition to appearing pro hac vice in the Bristol Bankruptcy and performing
legal services in Oklahoma in connection with the representation, Kincaid
traveled to Texas a total of five times for creditors' meetings, a meeting with
substitute counsel retained by the Appellants, and a court-ordered settlement
conference. He participated in Oklahoma in a telephone hearing before the
bankruptcy court. He also was involved in the preparation and transmittal to
Texas of a "Confidential Mediation Statement" directed to a mediator appointed
by the bankruptcy court. 
•       In addition to appearing pro hac vice in the Bristol Bankruptcy and performing
legal services in Oklahoma in connection with the representation, Hills traveled
to Texas a total of four times for hearings before the bankruptcy court. He
participated in Oklahoma in three telephone hearings before the bankruptcy
court. He also was involved in the preparation and transmittal to Texas of a
"Confidential Mediation Statement" directed to a mediator appointed by the
bankruptcy court. 
•       In addition to appearing pro hac vice in the Bristol Bankruptcy, Thomas's role
in the representation involved performing legal services in Oklahoma in his
capacity as a bankruptcy specialist. 
•       By local rule, the minimum standards of conduct imposed on lawyers admitted
to practice before the United States Bankruptcy Court for the Southern District
of Texas are the Texas Disciplinary Rules of Professional Conduct. Bankruptcy
Local Rule 1001e (S.D. Tex.); Local Rule Appendix A, Rule 1A (S.D. Tex.); see
Tex. Disc. R. Prof. Conduct, Rule 8.05 ("[a] lawyer is subject to the disciplinary
authority of this state, if admitted to practice in this state or if specially
admitted by a court of this state for a particular proceeding"). 
V. THE LAW 
         If a nonresident defendant purposefully avails itself of the privileges
and benefits of conducting business in the State of Texas, this State has
sufficient contacts to confer personal jurisdiction. Tex. Civ. Prac. & Rem. Code
Ann. § 17.042 (Vernon 1997); BMC Software, 83 S.W.3d at 795; Exito
Elecs., 99 S.W.3d at 366. The Texas long-arm statute governs Texas courts' exercise
of jurisdiction over nonresident defendants. See Tex. Civ. Prac. & Rem. Code
Ann. §§ 17.041-.045 (Vernon 1997 & Supp. 2004); BMC Software, 83 S.W.3d
at 795. The long-arm statute permits Texas courts to exercise jurisdiction over a
nonresident defendant that "does business" in Texas. Tex. Civ. Prac. & Rem. Code
Ann. § 17.042 (Vernon 1997). The statute recites a non-exclusive list of
activities that constitute "doing business." Id.; BMC Software, 83 S.W.3d
at 795.  Section 17.042's broad language extends Texas courts' personal jurisdiction
"as far as the federal constitutional requirements of due process will permit." BMC
Software, 83 S.W.3d at 795. 
         Personal jurisdiction over nonresident defendants is constitutional when two
conditions are met: (1) the defendant has established minimum contacts with the
forum state, and (2) the exercise of jurisdiction comports with traditional notions of
fair play and substantial justice. Id. Although not determinative, foreseeability is an
important consideration in deciding whether the nonresident defendant has
purposefully established "minimum contacts" with the forum state. Id. A nonresident
defendant should not be subject to a foreign court's jurisdiction based on "random,"
"fortuitous," or "attenuated" contacts. Id. 
         Accordingly, we focus on the defendant's activities and expectations
in deciding whether it is proper to call it before a Texas court. Am. Type
Culture Collection, 83 S.W.3d at 806. The minimum-contacts analysis requires
that a nonresident defendant "purposefully avail" itself of the privilege of
conducting activities within Texas, thus invoking the benefits and protections of
the laws of Texas. Id. (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475
(1985)). The defendant's activities, whether they consist of direct acts within
Texas or conduct outside Texas, must justify a conclusion that the defendant
reasonably could anticipate being called into a Texas court.  Am. Type Culture
Collection, 83 S.W.3d at 806 (citing World-Wide Volkswagen Corp. v. Woodson,
444 U.S. 286, 297 (1980)). It is not the quantity but the quality and nature of the
contacts that are important to the minimum-contacts analysis. See Am. Type Culture
Collection, 83 S.W.3d at 806. Even a single act can support jurisdiction so long as
it is substantial. Royal Mortgage Corp. v. Montague, 41 S.W.3d 721, 731 (Tex.
App.–Fort Worth 2001, no pet.) (citing Burger King, 471 U.S. at 475 n.18). 
         The nonresident defendant's minimum contacts with Texas may confer either
specific or general personal jurisdiction. BMC Software, 83 S.W.3d at 795; Exito
Elecs., 99 S.W.3d at 366. Our analysis in this case focuses on specific personal
jurisdiction. 
A. Specific Personal Jurisdiction
         Specific personal jurisdiction requires that the alleged liability arise from or relate
to an activity conducted in Texas. BMC Software, 83 S.W.3d at 795; Exito
Elecs., 99 S.W.3d at 366. For a court to exercise specific jurisdiction over a
nonresident defendant, two requirements must be met: (1) the defendant's contacts
with the forum must be purposeful; and (2) the cause of action must arise from or
relate to those contacts. Am. Type Culture Collection, 83 S.W.3d at 806. The
nonresident defendant's contacts must be purposefully directed at Texas so that
the defendant could foresee being haled into court here. M.G.M. Grand Hotel,
8 S.W.3d at 409 (citing CMMC v. Salinas, 929 S.W.2d 435, 438 (Tex. 1996)). 
B. Fair Play and Substantial Justice
         Once we determine that a nonresident defendant purposefully established
minimum contacts with Texas, we evaluate the contacts in light of other factors to
determine if the assertion of personal jurisdiction comports with traditional notions of
fair play and substantial justice. Guardian Royal Exch. Assurance, Ltd. v. English
China Clays, P.L.C., 815 S.W.2d 223, 228 (Tex. 1991) (citing Asahi Metal Indus. Co.
v. Superior Court, 480 U.S. 102, 113-15 (1987); Burger King, 471 U.S. at 476). 
These factors include: (1) "the burden on the defendant"; (2) the interests of the forum
State in adjudicating the dispute; (3) "the plaintiff's interest in obtaining convenient
and effective relief"; (4) "the interstate judicial system's interest in obtaining the most
efficient resolution of controversies"; and (5) "the shared interest of the several States
in furthering fundamental substantive social policies." Guardian Royal, 815 S.W.2d
at 228 (quoting World-Wide Volkswagen, 444 U.S. at 292; Burger King, 471 U.S.
at 477). "These considerations sometimes serve to establish the reasonableness of
jurisdiction upon a lesser showing of minimum contacts than would otherwise be
required." Guardian Royal, 815 S.W.2d at 228 (quoting Burger King, 471 U.S.
at 477). 
VI. ANALYSIS 
A. Specific Personal Jurisdiction
         As a threshold issue, the Lawyers invoke the fiduciary-shield doctrine. See D.H.
Blair Inv. Banking Corp. v. Reardon, 97 S.W.3d 269, 277 (Tex. App.–Houston
[14th Dist.] 2002, pet. dism'd w.o.j.) (op. on reh'g). The fiduciary-shield doctrine
protects a corporate officer or employee from the trial court's exercise of general
personal jurisdiction when all of the individual's contacts with Texas were on behalf of
the employer. SITQ E.U., Inc. v. Reata Rests., Inc., 111 S.W.3d 638, 650-51 (Tex.
App.–Fort Worth 2003, pet. filed); Brown v. Gen. Brick Sales Co.,
39 S.W.3d 291, 297-98 (Tex. App.–Fort Worth 2001, no pet.). The fiduciary-shield
doctrine has not been expressly adopted by the Texas Supreme Court. Brown,
39 S.W.3d at 300. The Lawyers assert they are not subject to the personal
jurisdiction of the trial court because their contacts with Texas were in a
representative capacity. They argue that Crowe & Dunlevy's contacts with Texas
cannot be imputed to each lawyer individually. 
         We note that the fiduciary-shield doctrine has been applied only to the exercise
of general personal jurisdiction over a nonresident defendant. See id. ("[W]here
intermediate appellate courts have applied some aspects of the fiduciary shield
doctrine, they have limited its application to jurisdictional claims based on the theory
of general jurisdiction as opposed to specific jurisdiction."). Moreover, the fiduciary-shield doctrine does not protect an employee from specific personal jurisdiction as to
intentional torts or fraudulent acts for which the employee may be held individually
liable. SITQ, 111 S.W.3d at 651; D.H. Blair, 97 S.W.3d at 277. The Appellants
allege conduct for which the Lawyers could be held individually liable. Accordingly,
we hold that the fiduciary-shield doctrine is not available to the Lawyers as a defense
to the trial court's exercise of specific personal jurisdiction. See D.H. Blair, 97 S.W.3d
at 278. 
         The Lawyers each provided extensive legal representation in connection with
bankruptcy proceedings in a Texas federal bankruptcy court. They each appeared pro
hac vice before the Texas bankruptcy court. They did not associate local counsel.


 
In appearing in bankruptcy court in the Southern District of Texas, the Lawyers
voluntarily subjected themselves to the minimum standards of professional conduct
imposed by the attorney disciplinary authority in Texas.  The Lawyers argue that
formal appearance in a federal court in Texas is not a critical factor in determining
personal jurisdiction. They rely on Eakin v. Acosta, 21 S.W.3d 405 (Tex. App.–San
Antonio 2000, appeal dism'd by agreement), disapproved on other grounds, BMC
Software, 83 S.W.3d at 794 n.1. However, the lawyer's in-court representation at
issue in Eakin was of a former client with no connection to the plaintiff or to the
malpractice claim asserted against the lawyer. Eakin, 21 S.W.3d at 409. The San
Antonio court of appeals found only that the nonresident defendant attorney's prior
appearance on behalf of another party in an unrelated lawsuit did not "provide a basis
for asserting specific jurisdiction." Id. (citing Guardian Royal, 815 S.W.2d at 230). 
Here, the Appellants assert that the Lawyers' appearances in the Bristol Bankruptcy
support specific jurisdiction because their claims arise from or relate to that contact
with the State of Texas. See Am. Type Culture Collection, 83 S.W.3d at 806. 
         The Lawyers correctly note that the local rule that subjects attorneys who
appear in bankruptcy court in the Southern District of Texas to the standards of
conduct reflected in the Texas disciplinary rules does not necessarily supply the
standard of care by which the performance of legal services by Oklahoma lawyers to
Oklahoma clients will be measured. See Bankruptcy Local Rule 1001e (S.D. Tex.);
Local Rule Appendix A, Rule 1A (S.D. Tex.). The Lawyers argue that conflicts-of-law
law will determine the applicable standard of care on the merits. The Lawyers confuse
"standard of care" with "standard of conduct." We are not concerned with the merits. 
The bankruptcy local rule is significant in the minimum-contacts analysis because the
Lawyers, in purposefully availing themselves of the privilege of appearing before a
Texas court, expressly invoked the benefits and protections of the laws of Texas in the
form of the Texas disciplinary rules. See Am. Type Culture Collection, 83 S.W.3d
at 806. 
          The Lawyers direct our attention to the fact that the bulk of the legal
representation they provided in connection with the Bristol Bankruptcy was
performed in Oklahoma. For the proposition that a pro hac vice appearance in
federal court does not support specific personal jurisdiction when the majority of
the services are performed elsewhere, the Lawyers cite Star Technology v. Tultex
Corp., 844 F. Supp. 295, 298 (N.D. Tex. 1993). However, unlike the Lawyers in this
case, the nonresident defendant lawyer in Star Technology had associated local
counsel in the underlying lawsuit. Id. His involvement in Texas was limited to twice
traveling here to participate in discovery and settlement matters, including one
appearance in a discovery hearing before a magistrate judge. Id. Other than making
those two trips to Texas and filing documents from his office in Washington, D.C., the
nonresident lawyer's work occurred outside Texas, "with the remainder of local work
handled by local counsel." Id. Further, the federal district judge observed:
Although Plaintiff accuses Metzger of conspiracy, that allegation alone
will not support the Court's exercise of jurisdiction absent minimum
contacts. See Deininger v. Deininger, 677 F. Supp. 486, 493 (N.D. Tex.
1988) ("Plaintiff, however, has not suggested a single activity by either
Defendant which was a part of this alleged conspiracy or fraud and which
took place in Texas."). 
Star Technology, 844 F. Supp. at 299. More significantly, however, the plaintiff who
sought to invoke the federal court's personal jurisdiction over the nonresident lawyer
was not the lawyer's client in the lawsuit, but rather the opposing party. Id. at 298. 
         Here, the Appellants allege conflicts of interest in the Lawyers' concurrent
representation of creditors involved in the Bristol Bankruptcy, a claim that permeates
the whole of the Lawyers' representation and the work they performed both in
Oklahoma and in Texas. Some of the allegations specifically focus on the effect of the
conflicts of interest on the Lawyers' advice with respect to a court-ordered settlement
conference held in Texas. The Appellants also allege professional negligence in
untimely filings in the Bristol Bankruptcy, a claim that focuses on services performed
both in Oklahoma and in Texas. The Lawyers attempt to address the merits of these
claims with arguments directed to the Appellants' proof of the allegations and the
Lawyers' counter-proof. Again, we are not concerned with the merits. 
         The Lawyers also point out that their clients' creditors chose Texas as the
forum, not them. Consequently, the Lawyers maintain, the services they provided in
connection with the Bristol Bankruptcy were not purposefully directed at Texas. This
argument ignores the fact that the clients could (and eventually did) retain Texas
counsel. The Bristol Entities may not have had a choice about the forum selected by
their creditors, but their Oklahoma lawyers had a choice about whether to represent
them in that forum. They chose to do so. They now seek to avoid the consequences
of that choice. 
         The Lawyers' activities in providing legal representation in connection with the
Bristol Bankruptcy included direct acts within Texas as well as conduct outside Texas. 
We cannot characterize the Lawyers' contacts with Texas as random, fortuitous, or
incidental. See BMC Software, 83 S.W.3d at 795. We find that each lawyer's pro
hac vice appearance in the Bristol Bankruptcy was a substantial, purposeful contact
directed at the State of Texas. See Am. Type Culture Collection, 83 S.W.3d at 806;
see also Montague, 41 S.W.3d at 731. We also find that the Appellants' causes of
action arise from or relate to the Lawyers' pro hac vice appearances and legal
representation in the Bristol Bankruptcy. See id.; see also M.G.M. Grand Hotel,
8 S.W.3d at 409. The Lawyers' contacts with Texas in providing legal representation
in connection with the Bristol Bankruptcy justify a conclusion that they reasonably
could anticipate being called into a Texas court. See Am. Type Culture Collection,
83 S.W.3d at 806. We hold that the Lawyers did not meet their burden of negating
specific jurisdiction as a basis for the trial court's exercise of jurisdiction. See BMC
Software, 83 S.W.3d at 795. 
B. Fair Play and Substantial Justice
         The Lawyers also argue that the imposition of personal jurisdiction does not
comport with traditional notions of fair play and substantial justice. We note that the
trial court retains personal jurisdiction over Crowe & Dunlevy, which apparently
conceded that its substantial legal representation of Texas clients subjects it to general
personal jurisdiction here. The Lawyers are all witnesses to the claims against their
law firm. Defending individual claims against them in Texas at the same time does not
impose any significant additional burden on the Lawyers. See Guardian
Royal, 815 S.W.2d at 228. Rather, it is in the interstate judicial system's interest of
efficient resolution of controversies, as well as in the Appellants' interest, for the
Texas court to hear the case against the Lawyers at the same time it hears the case
against the law firm that employs them. See id. Further, the Appellants have alleged
acts that may have affected real property in the State of Texas, including oil and gas
interests. See id. Where Texas property interests are at issue, Texas has a
heightened interest in adjudicating the dispute. See El Puerto de Liverpool, S.A. de
C.V. v. Servi Mundo Llantero S.A. de C.V., 82 S.W.3d 622, 638 (Tex. App.–Corpus
Christi 2002, pet. dism'd w.o.j.) (op. on reh'g). Finally, the exercise of personal
jurisdiction over the Lawyers as well as their law firm serves "the shared interest of
the several States in furthering fundamental substantive social policies" with regard
to balancing the privileges and burdens of practicing law in multiple jurisdictions. See
Guardian Royal, 815 S.W.2d at 228. Accordingly, we further hold that the exercise
of specific personal jurisdiction over the Lawyers comports with traditional notions of
fair play and substantial justice. See id. 
 VII. CONCLUSION
         Without hearing oral argument, we sustain the Appellants' three issues. We
reverse the trial court's orders granting the Lawyers' special appearances and remand
for further proceedings.
                                                                        ERRLINDA CASTILLO
                                                                        Justice


Opinion delivered and filed this
the 9th day of December, 2003.