Dennis BROWN and Dan
Cannon, Appellants,

v.

GENERAL BRICK SALES
CO., INC., Appellee.

No. 2–00–202–CV.

Court of Appeals of Texas,
Fort Worth.

Jan. 11, 2001.

Arter & Hadden, L.L.P.; William G. Compton and Michael E. Mears, Dallas, Attorney for Appellant.

Friedman, Young, Suder & Cooke; Jonathan T. Suder and Jay Dewald, Fort Worth, Attorney for Appellee.

PANEL B: LIVINGSTON, HOLMAN, and GARDNER, JJ.

## OPINION

LIVINGSTON, Justice.

Appellants Dennis Brown and Dan Cannon appeal to challenge the trial court's denial of their special appearance in a suit brought by appellee General Brick Sales Company, Inc. against them and their employer Boral Bricks, Inc. We affirm the trial court's judgment.

## FACTS

Appellants are employees of Boral Bricks, Inc., a foreign corporation located in Georgia and qualified to do business in the State of Texas. Appellants are both individuals residing in Georgia. Both appellants contested the trial court's jurisdiction and filed special appearances, which the court denied.

Boral and appellee, General Brick Sales Co., Inc., a Texas corporation with its principal place of business in Tarrant County, Texas, had enjoyed a long relationship. Appellee had bought brick manufactured by Boral for thirty years for sale to local contractors. In 1997, they began discussions about appellee becoming an exclusive distributor for Boral in a thirteen-county area, including Tarrant County, Texas (the "exclusive territory"). Appellants made trips to Texas to meet with appellee's representatives and with Bill Kay, the Boral regional sales manager residing in Texas.[1] Appellant Cannon was the Vice President of Sales for Boral and appellant Brown was the Chief Executive Officer during this time. Eventually, Boral and appellee verbally agreed to the exclusive distributorship agreement whereby appellee would maintain Boral as its major product line in exchange for Boral's promise not to sell directly in the "exclusive territory."

Then, in 1998, appellants came to Texas to talk to appellee about Boral buying appellee out entirely. Alternatively, they offered appellee a ten-year exclusive distributorship. Negotiations for the sale broke down, but appellants and Boral continued to represent their interest in the continuation of the distributorship arrangement and promised to prepare contract documents reflecting their agreement. Despite appellee's continued requests for the documents, the documents were never provided. Instead, appellants and Boral eventually told appellee of Boral's intent to begin direct sales in the "exclusive territory" effective June 15, 1999 and, after that date, appellee's authority to sell Boral products was terminated.

Appellee later sued appellants, Boral, and Kay for breach of contract, fraud, negligent misrepresentation, unfair competition, and misappropriation of proprietary information. Subject to their special appearances, appellants answered. The trial court heard and denied appellants' special appearances on May 22, 2000 and this accelerated interlocutory appeal followed. *See* Tex.Civ.Prac. & Rem.Code Ann. § 51.014(7) (Vernon Supp.2001); Tex. R.App.P. 28.1.

## SPECIAL APPEARANCE HEARING

Appellants filed their special appearances under Rule 120a of the Texas Rules of Civil Procedure, claiming the trial court did not have personal jurisdiction over them because they are non-residents of Texas and any contacts that occurred in Texas were on behalf of their employer, Boral, as opposed to in any individual capacity, and those protected under the fiduciary shield doctrine. *See* Tex.R.Civ.P. 120a. They denied sufficient minimum

---

1. Mr. Kay is a defendant below, but not a party to this appeal. Neither he nor Boral has contested jurisdiction.

contacts with Texas to justify personal jurisdiction over them and claimed that exercising jurisdiction over them individually would offend traditional notions of fair play and substantial justice, depriving them of due process as guaranteed by both the state and federal constitutions. Both denied the existence of specific or general jurisdiction. The trial court denied their special appearances finding the fiduciary shield doctrine inapplicable to the torts allegedly committed by them in Texas. On appeal, appellants claim the trial court erred in denying their special appearances.

## ISSUE PRESENTED

Appellants argue that the fiduciary shield doctrine should apply in the State of Texas to defeat specific jurisdiction based on tortious conduct unless a plaintiff can show the individual defendant acted in furtherance of his or her own benefit or the individual is the alter ego of the corporate defendant. In response, appellee contends the fiduciary shield doctrine does not and should not apply in Texas, but even if it did, the appellants' tortious conduct could personally benefit them.

## STANDARD OF REVIEW

■■■ Whether this state may assert jurisdiction over a foreign defendant is a mixed question of law and fact. *M.G.M. Grand Hotel, Inc. v. Castro*, 8 S.W.3d 403, 407 (Tex.App.—Corpus Christi 1999, no pet.); *Conner v. ContiCarriers & Terminals, Inc.*, 944 S.W.2d 405, 411 (Tex.App.—Houston [14th Dist.] 1997, no writ) (plurality op.) (stating existence of personal jurisdiction is a question of law, but proper exercise of that jurisdiction must sometimes be preceded by resolution of underlying factual disputes). Where, like here, the special appearance is based on undisputed or otherwise established facts, an appellate court should conduct a de novo review of the trial court's order. *Conner*, 944 S.W.2d at 411. We also review the trial court's application of law to the facts

under a de novo standard. *M.G.M.*, 8 S.W.3d at 408.

## DISCUSSION

### 1. FEDERAL JURISDICTIONAL ANALYSIS

■■■ Under the federal constitutional test of due process, a plaintiff must overcome two hurdles to justify the exercise of jurisdiction over a nonresident defendant. The plaintiff must show that the defendant has established minimum contacts with the forum state and show that the assertion of jurisdiction comports with fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

■■■ Where the activities of a defendant in a forum are isolated or disjointed, jurisdiction is proper only if the cause of action arises from a particular activity. In these cases, jurisdiction is said to be "specific." *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 1872 n. 8, 80 L.Ed.2d 404 (1984). The minimum contacts analysis in specific jurisdiction cases is somewhat narrow, focusing on the relationship among defendant, forum, and litigation. *See id.* at 414, 104 S.Ct. at 1872 (citing *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977)). In Texas, when specific jurisdiction is asserted, the cause of action must arise out of or relate to the nonresident defendant's contact with the forum state in order to satisfy the minimum contacts requirement. *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex.1991). Those activities must have been "purposefully directed" to the forum and the litigation must result from alleged injuries that "arise out of or relate to" those activities. *Id.* at 228 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985)).

The appellee does not contend appellants made the sort of continuing and systematic contacts with Texas necessary to

subject them to general jurisdiction. Appellee claims instead that its claims against appellants arise from purposeful acts committed by them in Texas and directed toward persons and entities in Texas. In other words appellee claims, and the trial court found, specific jurisdiction existed or at least was claimed, that was sufficient to justify the exercise of personal jurisdiction over appellants.

## 2. SPECIFIC JURISDICTION ANALYSIS IN TEXAS

A Texas court may exercise specific jurisdiction over a nonresident if two conditions are met. First, the Texas long-arm statute must authorize the exercise of jurisdiction; second, the exercise of jurisdiction must be consistent with federal and state constitutional guarantees of due process. *Schlobohm v. Schapiro,* 784 S.W.2d 355, 356 (Tex.1990); *see also* TEX. CIV.PRAC. & REM.CODE ANN. §§ 17.041–.069 (Vernon 1997). The broad language of the Texas long-arm statute allows the statute to reach as far as the federal constitution allows. *Schlobohm,* 784 S.W.2d at 357; *U–Anchor Adver., Inc. v. Burt,* 553 S.W.2d 760, 762 (Tex.1977), *cert. denied,* 434 U.S. 1063, 98 S.Ct. 1235, 55 L.Ed.2d 763 (1978). Furthermore, Texas has designed its own formula for *specific* jurisdiction to ensure compliance with both the federal and state constitutional standards. *See Schlobohm,* 784 S.W.2d at 358. The formula requires showing:

(1) The nonresident defendant must have purposefully established minimum contacts with Texas;

(2) There must be a "substantial connection" between the nonresident defendant and Texas arising from action or conduct of the nonresident defendant purposefully directed toward Texas;

(3) When specific jurisdiction is asserted, the cause of action must arise out of or relate to the nonresident defendant's contacts with Texas; and

(4) The assumption of jurisdiction by Texas must not offend traditional no-

tions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in Texas, the relative convenience of the parties, the benefits and protection of the laws of Texas afforded the respective parties, and the basic equities of the situation.

*Id.; Guardian Royal,* 815 S.W.2d at 227–31; *O'Brien v. Lanpar Co.,* 399 S.W.2d 340, 342 (Tex.1966). While this jurisdictional formula is a useful guide, the Texas Supreme Court has rejected its mechanical application. *Schlobohm,* 784 S.W.2d at 358. Indeed, as the elements indicate, jurisdictional analysis is equitable and highly fact-specific. Reviewing courts are to utilize a realistic approach when applying the formula. *Guardian Royal,* 815 S.W.2d at 231.

## 3. ANALYSIS

### A. Minimum Contacts

We must first decide whether there is a substantial connection between appellants and Texas arising from a purposeful act committed by them in Texas. The Texas long-arm statute allows a court to exercise personal jurisdiction over a nonresident defendant that does business in Texas. *CSR Ltd. v. Link,* 925 S.W.2d 591, 594 (Tex.1996). The statute provides that a nonresident does business in this state if the nonresident commits a tort in whole or in part in this state. TEX.CIV. PRAC. & REM.CODE ANN. § 17.042. Appellee's petition claims Boral and its employees, the appellants, committed torts while in Texas.

Appellee developed the following contacts by appellants Brown and Canon:

- Summer 1997—Appellant Brown traveled to Texas. At appellee's offices, Brown inquired about appellee's willingness to enter a written contract for the exclusive distribution of Boral brand products.

- Fall 1997—Brown and Cannon traveled to Texas and approached appellee

about an exclusive distributorship of Boral brand products for a thirteen-county territory, including Tarrant County. During the course of these discussions, Cannon and Brown each made specific representations to induce appellee's agreement to be an exclusive distributor for Boral. Brown and Cannon proposed that as long as Boral was a "major" part of appellee's product line, Plaintiff would be its exclusive distributor in the GBS Territory. Defendants Brown and Canon also represented that Boral Bricks would never sell "directly" in the "exclusive territory."

- Summer 1998—Brown and Cannon traveled to Texas to discuss appellee's willingness to sell the company to Boral. The parties agreed to meet in the Fall to discuss the acquisition. At this time Brown and Cannon requested copies of appellee's financial statements and other confidential, proprietary information for the ostensible purpose of determining the value of the company. During these acquisition efforts, Brown and Cannon represented that regardless of the outcome, they wanted to maintain the strong relationship with appellee and offered them a ten year contract to be Boral's exclusive distributor in the "exclusive territory."

- Summer 1998—Brown called appellee (in Texas) within a few days of the meeting described above to clarify what kind of standards of performance and numbers would make the acquisition go through.

- Summer 1998—Cannon traveled to Texas for the sole reason to discuss the acquisition with appellee. Upon arrival, Cannon and a representative of appellee went to lunch to discuss the deal. Immediately after the lunch meeting ended, Cannon flew back to Georgia.

- Summer 1998—Brown called appellee to discuss what types of financial information Boral required to analyze the acquisition deal (specifically, sales and profit information, debt information, etc.). Appellee sent this confidential, proprietary information to appellants for the purpose of facilitating the acquisition.

- Fall 1998—Appellants and Appellee met in Texas to discuss the acquisition. Following the Appellants' offer for the purchase of General Brick Sales, Cannon and Brown offered again to reduce the exclusive distributorship agreement to writing. Specifically, Cannon stated that he would send a written document memorializing the contract immediately upon his return to Georgia. Further, Cannon and Brown assured appellee that the exclusive distributorship arrangement was still a long term arrangement and reiterated that a written ten year contract would be forthcoming.

- Fall 1998—Cannon called appellee (in Texas) and asked them to draw up the written contract for the exclusive distributorship. When appellee informed Cannon that it does not have attorneys on retainer to handle such an undertaking, Cannon offered to have Boral's attorneys draft the contract. Appellee accepted this offer.

- November 1998—Appellee followed up with Cannon regarding the written exclusive distributorship. Cannon assured appellee that the written contract was almost finished and could be on its way soon.

- December 1998—Appellee again followed up with Cannon regarding the written exclusive distributorship contract. Again, Cannon assured appellee that the written contract was almost finished and would be on its way soon.

- January 1999—Appellee again followed up with Cannon regarding the written exclusive distributorship contract. Again, Cannon assured appellee that the written contract was al-

most finished and would be on its way soon.

- February 1999—Appellee again followed up with Cannon regarding the written exclusive distributorship contract. Again, Cannon assured appellee that the written contract was almost finished and would be on its way soon.

- Spring 1999—Cannon contacted appellee to set up a meeting stating that he wanted to discuss a partial acquisition of appellee. Cannon flew to Texas and, at the offices of appellee, informed appellee that Boral would be selling direct in the "exclusive territory" effective June 15, 1999, and that after that date, appellee would no longer be permitted to sell Boral products. Cannon also stated that Boral would not sell to any of appellee's customers.

If these acts, contacts, and trips to Texas constituted or resulted in either appellant committing a tort then we would determine they had done business in Texas.

### B. Fair Play and Substantial Justice

 Second, we must determine whether the assertion of personal jurisdiction comports with fair play and substantial justice. *Guardian Royal,* 815 S.W.2d at 223. In making this determination, the following factors, when appropriate, should be considered: (1) the burden on the defendant; (2) the interests of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *See id.* at 228 (citing *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980); *Burger King,* 471 U.S. at 477, 105 S.Ct. at 2184–85; *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102,

113, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987)).

 Only in rare cases will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state. *Id.* at 231; *Schlobohm,* 784 S.W.2d at 358 (stating "it has become less likely that the exercise of jurisdiction will fail a fair play analysis."). In *Burger King,* the United States Supreme Court set forth the stringent standard to be applied:

> [W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable. Most such considerations usually may be accommodated through means short of finding jurisdiction unconstitutional. For example, the potential clash of the forum's law with the "fundamental substantive social policies" of another State may be accommodated through application of the forum's choice-of-law rules. Similarly, a defendant claiming substantial inconvenience may seek a change of venue.

471 U.S. at 477, 105 S.Ct. at 2184–85 (footnotes omitted).

Appellee claimed only specific jurisdiction over the individual appellants based on the torts it alleged they committed in Texas. Appellants contend the fiduciary shield doctrine should apply to the Texas jurisdictional analysis. Because appellants' sole basis for challenging the denial of the special appearance is based upon the application of the fiduciary shield doctrine, we address only that aspect of personal jurisdiction.

### C. The Fiduciary Shield Doctrine

 The fiduciary shield doctrine provides that corporate officers are not subject to jurisdiction in a foreign forum where their actions are taken in a repre-

sentative capacity. *Amoco Chem. Co. v. Tex. Tin Corp.*, 925 F.Supp. 1192, 1201 (S.D.Tex.1996). In the jurisdictions where it applies, a plaintiff can defeat its protection by showing that the individual defendant was advancing his own interest or that he was an alter ego of his employer. *Saktides v. Cooper*, 742 F.Supp. 382, 385 (W.D.Tex.1990). Appellants urge us to adopt this doctrine but appellee claims Texas courts have rejected it.

The First Court of Appeals held that individual defendants were not immune from jurisdiction in Texas just because they acted in their corporate capacities. *Gen. Elec. Co. v. Brown & Ross Int'l Distribs., Inc.*, 804 S.W.2d 527, 532 (Tex. App.—Houston [1st Dist.] 1990, writ denied). Citing to the United States Supreme Court opinion of *Calder v. Jones*, the appellate court noted that employee status does not insulate a person from jurisdiction. *Id.* (citing 465 U.S. 783, 790, 104 S.Ct. 1482, 1487, 79 L.Ed.2d 804 (1984)). *Calder* directs us to test each particular defendant's actions and contacts with the forum state separately and, therefore, the Houston First court declined to apply the fiduciary shield doctrine. *Id.* (citing *Calder*, 465 U.S. at 790, 104 S.Ct. at 1487). In a more recent case, however, that same court, applied the fiduciary shield doctrine to defeat general jurisdiction. *Garner v. Furmanite Australia Pty., Ltd.*, 966 S.W.2d 798 (Tex.App.— Houston [1st Dist.] 1998, pet. denied). In *Garner* the First Court of Appeals found no general jurisdiction against an employee of a company because the fiduciary shield doctrine protects the employee from personal jurisdiction when the employee's actions are on behalf of his employer. *Id.* at 803. The *Garner* opinion cited to the Fifth Circuit's opinion in *Stuart v. Spademan*, as its source for the fiduciary shield doctrine. *Id.* (citing *Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir.1985) (holding jurisdiction over an individual may not usually be predicated on jurisdiction over a corporation unless the corporation is the

alter ego of the individual or when the individual perpetrates a fraud)).

There are a few other Texas cases that discuss or apply the fiduciary shield doctrine. In *Vosko v. Chase Manhattan Bank, N.A.*, the Houston Fourteenth Court of Appeals applied an aspect of the doctrine, holding that personal jurisdiction over an individual may not be based on jurisdiction over a corporation with which an individual is associated unless the corporation is the alter ego of the individual. 909 S.W.2d 95, 99 (Tex.App.—Houston [14th Dist.] 1995, pet. denied).

In *Clark v. Noyes*, a Dallas case, the court said, "Generally, jurisdiction over an individual cannot be based upon jurisdiction over a corporation." 871 S.W.2d 508, 518 (Tex.App.—Dallas 1994, no writ) (citing *Spademan*, 772 F.2d at 1185). In *Clark*, a nonresident medical doctor was sued by a Texas resident for negligence based on medical attention he received out of state. *Id.* at 518. The plaintiff claimed general jurisdiction existed over the doctor based on his ownership and position as an officer and director of a corporation that provided some medical supplies nationally. The trial court granted the doctor's special appearance and the appellate court affirmed its decision. *Id.*

The Eighth Court of Appeals appears to have also applied some aspects of the fiduciary shield doctrine. In *Leon Ltd. v. Albuquerque Commons P'ship*, the court applied the "alter ego" theory to find the defendant had insufficient purposeful contacts with the state to assert personal jurisdiction against him in his individual capacity. 862 S.W.2d 693, 708 (Tex.App.— El Paso 1993, no writ). Citing to the federal Fifth Circuit case of *Spademan*, the El Paso court observed the general rule that an individual's contacts on behalf of a corporation do not create personal jurisdiction over the person. *Id.* (citing *Spademan*, 772 F.2d at 1197). More recently, the Eighth Court of Appeals held, "Jurisdiction over an individual cannot be based on jurisdiction over a corporation

unless the corporation is the alter ego of the individual." *MacMorran v. Wood,* 960 S.W.2d 891, 898 (Tex.App.—El Paso 1997, pet. denied). Because that plaintiff made no allegations of alter ego, the trial court granted the individual defendants' special appearance and the appellate court affirmed. *Id.*

The Corpus Christi Court of Appeals applied the fiduciary shield doctrine in a general jurisdiction case stating, "The courts will not hold individual officers, directors, or stockholders liable on the obligations of a corporation except where it appears the individuals are using the corporate entity as a sham to perpetrate a fraud, avoid personal liability, avoid the effect of a statute, or in a few other exceptional situations not present here." *J & J Marine, Inc. v. Le,* 982 S.W.2d 918, 927 (Tex.App.—Corpus Christi, 1998, no pet.). Similarly, jurisdiction over an individual generally cannot be based on jurisdiction over a corporation with which he is associated unless the corporation is the alter ego of the individual. *Vosko,* 909 S.W.2d at 99; *Clark,* 871 S.W.2d at 518; *Leon,* 862 S.W.2d at 708.

The Eastland Court of Appeals agrees. In *Al–Turki v. Taher,* it held that "[g]enerally, a court may not assert general jurisdiction over an individual based on that individual's association with a corporation unless the *corporation is the alter ego of the individual.*" 958 S.W.2d 258, 263 (Tex.App.—Eastland 1997, pet. denied) (emphasis added). The appellate court found insufficient facts to support an alter ego theory and insufficient continuous contacts by the individual shareholder. *Id.* (citing *Vosko,* 909 S.W.2d at 99).

The Beaumont Court of Appeals has decided two cases concerning the fiduciary shield doctrine. In *Cadle v. Graubart,* it held allegations of tort against an individual shareholder and director were insufficient to support jurisdiction over the individual where the allegations and evidence were non-specific. 990 S.W.2d 469, 472 (Tex.App.—Beaumont 1999, no pet.). And

in *Solow v. Century Assets Corp.,* the court found jurisdiction over individuals whose contacts were made on behalf of their corporations where the individuals received some benefits personally from the activities directed to the forum. 12 S.W.3d 512, 516 (Tex.App.—Beaumont 1999, no pet.).

In *Smith v. Lanier,* 998 S.W.2d 324, 334-35 (Tex.App.—Austin 1999, pet. denied), Lanier, an individual and nonresident, challenged the Texas court's jurisdiction over her claiming that her trips and contacts to Texas occurred as a result of the power of attorney for her father and, therefore, her Texas contacts were solely in her fiduciary capacity, as his agent, not individually. The Austin Court of Appeals disagreed, noting that Lanier confused the "nature of jurisdiction with that of liability." *Id.* at 334. The court further noted that agency is an affirmative defense to liability but not a shield from jurisdictional contacts with a state. *Id.* at 334-35

In *Siskind v. Villa Found. for Educ., Inc.,* the supreme court held where there is no allegation of specific acts of conspiracy or misrepresentations attributed to the individuals, nor an allegation that they are the alter ego of the corporation:

> solicitation of business in Texas cannot be imputed to the individual Respondents so as to render them amenable to suit in Texas.
>
> . . . .
>
> Absent some allegation of a specific act in Texas, or one with reasonable foreseeable consequences within this state's borders, a nonresident employee of a foreign corporation cannot be sued in Texas simply because his or her employer solicits business here. Constitutional considerations of due process forbid this bootstrapping of minimum contacts.

642 S.W.2d 434, 437–38 (Tex.1982) (citation omitted). This was a breach of contract claim where the plaintiff failed to differentiate between allegations against the corporate entity and the individual defendants, solely claiming that the individuals

were jointly and severally liable individually and as agents of the corporation. *Id.; see also Nat'l Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 776 (Tex.1995) (granting mandamus to relator, nonresident association, challenging trial court's finding that specific jurisdiction existed over entity because some of its mailings were received in Texas in alleged conspiracy).

These cases reveal a certain pattern. First, it appears that the fiduciary shield doctrine has not been explicitly adopted by the Texas Supreme Court. Second, where intermediate appellate courts have applied some aspects of the fiduciary shield doctrine, they have limited its application to jurisdictional claims based on the theory of general jurisdiction as opposed to specific jurisdiction. Third, since Texas courts are to always exercise jurisdiction to the limits of federal due process, we should look to the Supreme Court's analysis in the *Calder* case where that court refused to create a blanket exception to jurisdiction that fails to test each defendant's actions and contacts with the forum separately. *Calder*, 465 U.S. at 790, 104 S.Ct. at 1487. This approach, taken by both the Houston First Court and the Austin Court, conforms to the dictates of *Siskind* as well as our prior precedent. *Nikolai v. Strate*, 922 S.W.2d 229, 241 (Tex.App.—Fort Worth 1996, pet. denied). Additionally, it limits the confusion created by applying theories of liability to basis of jurisdiction, as noted by the Austin court. *Lanier*, 998 S.W.2d at 334–35.

Therefore, we hold the trial court correctly refused to apply the fiduciary shield doctrine. Rather, we hold that each individually-named defendant's contacts should be separately alleged and tested. To acquire specific jurisdiction requires allegations of specific acts in Texas with reasonably foreseeable consequences within the state's borders. Because the only basis for appellants' appeal is the trial court's failure to apply the fiduciary shield

doctrine, we affirm the trial court's denial of appellants' special appearances.