ACCEPTED
01-14-00703-cv
FIRST COURT OF APPEALS
HOUSTON, TEXAS
11/30/2015 4:59:23 PM
CHRISTOPHER PRINE
CLERK

NO. 01-14-00703-CV

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
11/30/2015 4:59:23 PM
CHRISTOPHER A. PRINE
Clerk

IN THE COURT OF APPEALS FOR THE
FIRST DISTRICT OF TEXAS AT HOUSTON

**CHRISTOPH HENKEL**

*Appellant*

**v.**

**EMJO INVESTMENTS, LTD. and H.J. VON DER GOLTZ**

*Appellees*

On appeal from the 215th Judicial District Court, Harris County, Texas
The Honorable Elaine H. Palmer, presiding
Cause No. 2011-44058

## RESPONSE TO MOTION FOR REHEARING

Kevin Dubose
Texas Bar No. 06150500
ALEXANDER, DUBOSE, JEFFERSON
  & TOWNSEND LLP
1844 Harvard Street
Houston, Texas 77008-4342
Telephone: 713-523-2358
Facsimile: 713-522-4553
kdubose@adjtlaw.com

Alexandra Albright
Texas Bar No. 21723500
ALEXANDER, DUBOSE, JEFFERSON
  & TOWNSEND LLP
515 Congress, Suite 2350
Austin, Texas 78701-3562
Telephone: 512-482-9300
Facsimile: 512-482-9303
aalbright@adjtlaw.com

Kelley M. Keller
Texas Bar No. 11198240
Tracey N. Ellison
Texas Bar No. 15054720
ELLISON & KELLER, P.C.
5120 Woodway, Suite 6019
Houston, Texas 77056
Telephone: 713-266-8200
Facsimile: 713-266-8201
kkeller@ellison-keller.com
tellison@ellison-keller.com

*Attorneys for Appellees*

# Table of Contents

Table of Contents ................................................................................................i

Table of Authorities ......................................................................................... iii

Record References & Abbreviations ........................................................................v

Summary of Argument .........................................................................................1

Preliminary Comment on the Record  ....................................................................1

Argument............................................................................................................5

    I.      Consistent with case law, the Opinion analyzes all purposeful
           contacts together, rather than isolating any single contact
           to establish jurisdiction ...............................................................................5

           A.   Consistent with *National Industrial Sand*, the Opinion
               rests upon Henkel's purposeful contacts with Texas,
               not the mere allegation of a conspiracy ................................................6

           B.   Consistent with *Moncrief,* the Opinion rests upon allegations
               connecting Henkel's meetings with a co-conspirator in Texas
               to the Investors' claims and not a "mere meeting" in Texas ................7

           C.   Consistent with the fiduciary shield doctrine, the Opinion
               rests upon Henkel's purposeful contacts with Texas,
               not mere corporate board membership ................................................10

    II.     The Opinion follows *Moki Mac* in considering only Henkel's contacts
           that are substantially connected to the operative facts of the litigation .....13

           A.   *Moki Mac* rejected the substantive relevance test
               and adopted the substantial connection test for
               the "arising from" prong of specific jurisdiction .................................13

           B.   The purposeful contacts upon which the Opinion relies are
               substantially connected to the operative facts of the litigation ..........16

Prayer ..............................................................................................................18

i

Certificate of Service ........................................................................19

Certificate of Compliance ...............................................................20

# Table of Authorities

**Cases**

*BMC Software Belgium, N.V. v. Marchand*,
  83 S.W.3d 789 (Tex. 2002) ...................................................................... 14, 15

*Brown v. General Brick Sales Co., Inc.*,
  39 S.W.3d 291 (Tex. App.—Fort Worth 2001, no pet.) .................................11

*Cadle v. Graubart*,
  990 S.W.2d 469 (Tex. App.—Beaumont 1999, no pet.) .................................12

*D.H. Blair Investment Banking Corp. v. Reardon*,
  97 S.W.3d 269 (Tex. App.—Houston [14th Dist.]
  2002, pet. dism'd w.o.j.) ...............................................................................9

*Ennis v. Loiseau*,
  164 S.W.3d 698 (Tex. App.—Austin 2005, no pet.) .......................................7

*Garner v. Furmanite Australia Pty., Ltd.*,
  966 S.W.2d 798 (Tex. App.—Houston [1st Dist.] 1998, pet. denied).............12

*Hotel Partners v. Craig*,
  993 S.W.2d 116 (Tex. App.—Dallas 1994, pet. denied) .................................8

*M & F Worldwide Corp. v. Pepsi-Cola Metropolitan Bottling Co.*,
  453 S.W.3d 492 (Tex. App.—Houston [14th Dist.] 2014, pet. filed) ...............7

*Michiana Easy Livin' Country, Inc. v. Holten*,
  168 S.W.3d 777 (Tex. 2005)...........................................................................9

*Moki Mac River Expeditions v. Drugg*,
  221 S.W.3d 569 (Tex. 2007)...................................................... 13, 14, 15, 16

*Moncrief Oil International, Inc. v. OAO Gazprom*,
  414 S.W.3d 142 (Tex. 2013)...................................................... 7, 8, 9, 10, 17

*National Industrial Sand Association v. Gibson*,
  897 S.W.2d 769 (Tex. 1995)......................................................................6, 7

*Orthoflex, Inc. v. ThermoTek, Inc.*,
  983 F. Supp. 2d 866 (N.D. Tex. 2013).............................................................4

*Spoljaric v. Percival Tours, Inc.*,
    708 S.W.2d 432 (Tex. 1986) ............................................................................4

*Stull v. LaPlant*,
    411 S.W.3d 129 (Tex. App.—Dallas 2013, no pet.)............................ 7, 11, 12

*Vosko v. Chase Manhattan Bank, N.A.*,
    909 S.W.2d 95 (Tex. App.—Houston [14th Dist.] 1995, writ denied)........9, 12

*Walden v. Fiore*,
    134 S. Ct. 1115 (2014) ..............................................................................8, 17

*Wright v. Sage Engineering, Inc.*,
    137 S.W.3d 238 (Tex. App.—Houston [1st Dist.] 2004, pet. denied)...... 11, 12

*Zimmerman v. Glacier Guides, Inc.*,
    151 S.W.3d 700 (Tex. App.—Waco 2004, no pet.)...........................................7

## Record References & Abbreviations

"CR#" refers to the Original Clerk's Record, filed November 24, 2014, indicating the page number of the reference.

"SCR#" refers to the First Supplemental Clerk's Record, filed December 29, 2014, indicating the page number of the reference.

"MFR" and "Motion" refer to Henkel's Motion for Rehearing.

"Opinion" and "Op." refer to the Court's Opinion in this matter, issued August 27, 2015.

"Kimball Affidavit" refers to the Affidavit of Charles Austin Kimball, dated July 1, 2014, and submitted in support of the Investors' Response to Henkel's Special Appearance. CR305-06.

"Henkel" refers to Appellant Christoph Henkel.

"Investors" refers to the Intervenors named in the Petition in Intervention, filed November 11, 2011.

"NC12" refers to both NC12 and its predecessor entity Texas Syngas, Inc. ("TSI").

"Sydow" refers to Defendant Michael D. Sydow.

## Summary of Argument

Henkel's Motion fails to identify anything in the Opinion that contravenes Texas authority. Instead, Henkel relies on insupportable characterizations of the Opinion and the Record and misstatements of law. The Opinion correctly examines the Record and concludes that the evidence and unrefuted allegations support findings of Henkel's purposeful Texas contacts related to the claims.

- The Opinion correctly examines Henkel's Texas contacts and finds them sufficient to support jurisdiction without imputing the contacts of Henkel's co-conspirators or adopting civil conspiracy as an "independent basis for jurisdiction."

- The Opinion correctly disregards the fiduciary shield doctrine because it is inapplicable where direct claims are asserted against board members.

- The Opinion correctly concludes that Henkel's contacts with Texas are substantially connected to the operative facts of the litigation.

## Preliminary Comment on the Record

Henkel's Motion diverts attention from the central question: Does the Record support the exercise of specific personal jurisdiction over Henkel? To re-focus, we begin there.

The Investors alleged that the officers and directors of NC12—a Texas-based company—operated the company as a vehicle to defraud investors, landing the company in a Texas bankruptcy court. Henkel is one of those directors and was sued as a co-conspirator in the fraud.

1

Specifically, the Investors alleged that:

- Henkel conducted business in Texas. CR60-61.

- NC12 was headquartered in Texas, and the alleged tortious conduct occurred in Texas. *See* CR64, 225-26, 228-29, 288-89.[1]

- The conspiracy arises directly from Henkel's activities as a director of NC12. *See* CR60-61, 63-64, 82, 214, 317, 320.

Henkel filed his own affidavit broadly denying contacts with Texas. CR33-34. The Investors responded with uncontested evidence discrediting Henkel's affidavit. Specifically:

- **Henkel misrepresented his travel to Texas**. Henkel stated that he had not visited or traveled to Texas in the past 30 years. CR38. The Kimball Affidavit established that Henkel visited Texas twice to meet with his alleged co-conspirator Sydow in Houston. CR305-06.

- **Henkel misrepresented his investments in Texas**. Henkel stated that he did not have any investments in Texas. CR39. However, Henkel owned 19,230 shares in Texas-based NC12. CR295.

- **Henkel misrepresented his participation in litigation in Texas**. Henkel stated that, other than this lawsuit, he had never been a party to litigation in any state or federal court in Texas. CR39. The evidence proved this statement to be false. *See* CR258-70.

- **Henkel misrepresented his service as a director of NC12**. Henkel denied being a director of NC12. CR276, 278-79. But Henkel served on the board of directors of TSI from early 2008 to May 2009, and on the board of NC12 in 2010. CR60-61, 276, 289-90.

---

[1]    Henkel neither plead nor proved that the alleged fraudulent misrepresentations issued from any place other than NC12's Texas headquarters.

Accordingly, the Opinion correctly observed that the trial court "reasonably could have concluded that Henkel's characterization of his Texas contacts as unrelated to any alleged conspiracy was not credible. . . ." Op.10. And it correctly refused to "disturb a trial court's resolution of conflicting evidence that turns on the credibility or weight of the evidence." Op.6.

Furthermore, Bankruptcy Judge Isgur's Memorandum Opinion[2] does not limit the scope of this action or the specific jurisdiction analysis. *See* MFR3. Henkel claims that Judge Isgur dismissed claims for his alleged "post-purchase misconduct" and remanded only claims related to "pre-investment" activity. However, the assertion overstates the effect of Judge Isgur's opinion.

In dismissing certain claims as belonging to the bankruptcy estate,[3] Judge Isgur held that the Investors could not "seek **damages** for dilution of corporate value due to the alleged stripping or misappropriation of corporate assets." SCR29 (emphasis added). But by limiting the **damages** that could be recovered, Judge Isgur did not limit the evidence relevant to the fraud and conspiracy to commit

---

[2]     Memorandum Opinion in *In re NC12, Inc.*, Case No. 11-38794, issued August 31, 2012. SCR11-41.

[3]     Judge Isgur dismissed the Investors' shareholder oppression and breach of fiduciary duty claims for lack of standing because they were derivative and belonged to the bankruptcy estate, not because they lacked merit. SCR22, 30, 32. Judge Isgur remanded to state court the Investors' direct claims for fraud and conspiracy to commit fraud based upon the same facts. SCR38.

3

fraud claims which he found properly belonged to and could be asserted by the Investors. SCR29.[4]

In any event, despite Henkel's statement that "the vast majority of the allegations . . . in no way concern such alleged misrepresentations and reliance *at the time of* Intervenor's investments," MFR3 (emphasis in original), the Record shows otherwise. The investment period began in December 2007 and continued through September 2010,[5] when NC12 converted notes to shares. *See* CR54-58, 70-71, 78. The Kimball Affidavit established that Henkel met with Sydow in Texas twice during that period, and Henkel failed to controvert that evidence. Nor does he point to any other contacts relied on in the Opinion that are "post-purchase."

---

[4] Post-misrepresentation conduct may evidence a party's intent at the time the misrepresentation was made. *See Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986) ("While a party's intent is determined at the time the party made the representation, it may be inferred from the party's subsequent acts after the representation is made."); *Orthoflex, Inc. v. ThermoTek, Inc.*, 983 F. Supp. 2d 866, 879 (N.D. Tex. 2013).

[5] The last new investment by an Investor was a $100,000 investment by Emjo Investments, Ltd. in August 2010. CR55.

**Argument**

The Motion attacks the Opinion in two ways: (1) claiming the contacts identified in the Opinion are not sufficient on their own to justify jurisdiction, and (2) claiming that other contacts identified in the Opinion are not sufficiently related to the causes of action alleged to be jurisdictionally significant. Both arguments fail. The Opinion properly concludes that Henkel's meetings with an alleged co-conspirator "demonstrate Henkel's purposeful availment of the Texas forum, rather than simply a fortuitous connection to it" and that "[w]hen coupled with allegations of a conspiracy," Henkel's meetings in Texas "provide a nexus for the suit to be brought in a Texas court." Op.10.

I. **Consistent with case law, the Opinion analyzes all purposeful contacts together, rather than isolating any single contact to establish jurisdiction.**

Henkel argues that the Opinion improperly relies on "a **mere meeting** between alleged co-conspirators in Texas" MFR4 (emphasis added), and "**mere membership** on a board of directors." MFR10 (emphasis added). But the Opinion does not focus on merely **one** of these contacts. A review of the authorities and the Opinion confirms that Henkel's argument is without merit.

5

**A.** **Consistent with *National Industrial Sand*, the Opinion rests upon Henkel's purposeful contacts with Texas, not the mere allegation of a conspiracy.**

In *National Industrial Sand*,[6] the Texas Supreme Court "decline[d] to recognize the assertion of personal jurisdiction over a nonresident defendant based **solely** upon the effects or consequences of an alleged conspiracy with a resident in the forum state." 897 S.W.2d at 773 (emphasis added). The opinion made clear that a court may not impute the forum contacts of a co-conspirator to a non-resident to establish jurisdiction. Instead, the court said, "we restrict our inquiry to whether [the non-resident] itself purposefully established minimum contacts such as would satisfy due process." *Id*.

Henkel contends that the Opinion contravenes *National Industrial Sand* by erroneously founding jurisdiction on the allegation of a conspiracy "standing alone," resulting in an "expansion of the jurisdictional potential of Intervenors' conspiracy claim." MFR4-5. However, the Opinion correctly notes that to find specific jurisdiction, the Court must conclude "that Henkel's purposeful conduct, **not another's**, caused the contact." Op.9 (emphasis added). The Opinion then examines **Henkel's** contacts with Texas and concludes that **Henkel's** meetings with an alleged co-conspirator were purposeful, "rather than simply a fortuitous

---

[6]     *Nat'l Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769 (Tex. 1995).

6

connection" to Texas. Op.10. Thus, the Opinion is consistent with *National Industrial Sand*.

**B.**  **Consistent with *Moncrief*, the Opinion rests upon allegations connecting Henkel's meetings with a co-conspirator in Texas to the Investors' claims and not a "mere meeting" in Texas.**

Henkel also suggests that the Opinion contravenes *Moncrief*[7] by finding personal jurisdiction based on a "mere meeting" with an alleged co-conspirator in Texas, without **evidence** that the "purpose or effect" of those meetings was to further the fraud. MFR5-6, 9-10. Yet, (1) the Investors alleged the meetings were in furtherance of the fraud; (2) Henkel submitted no evidence to the contrary; and (3) Henkel's subjective purpose in meeting in Texas is irrelevant to the jurisdictional inquiry.

As the Opinion states, a court considers "both the plaintiff's original pleadings and its response to the defendant's special appearance in determining whether the plaintiff satisfied its burden to allege jurisdictional facts." Op.11.[8] Henkel cites no authority to the contrary, but instead ignores portions of the

---

[7]  *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142 (Tex. 2013).

[8]  *See also M & F Worldwide Corp. v. Pepsi-Cola Metro. Bottling Co.,* 453 S.W.3d 492, 503 (Tex. App.—Houston [14th Dist.] 2014, pet. filed); *Stull v. LaPlant*, 411 S.W.3d 129, 134 (Tex. App.—Dallas 2013, no pet.); *Ennis v. Loiseau*, 164 S.W.3d 698, 705 (Tex. App.—Austin 2005, no pet.); *Zimmerman v. Glacier Guides, Inc.*, 151 S.W.3d 700, 704 (Tex. App.—Waco 2004, no pet.).

7

Record by claiming "there is no allegation in the Petition in Intervention about the two supposed meetings between Sydow and Henkel." MFR9.

Henkel met at least twice with his alleged co-conspirator in Texas,[9] and the pleadings expressly allege that the claims against Henkel arise from his activities as a director of NC12 and that Henkel's Texas visits with a co-director were in furtherance of the alleged conspiracy. *See* CR60-61, 63-64, 82, 214, 317, 418, 421. As the Opinion observes, because the trial court rejected Henkel's false affidavit and Henkel offered no additional evidence to controvert the allegations that the meetings in Houston were in furtherance of the conspiracy to defraud investors, the Investors' allegations are taken as true for purposes of the special appearance. Op.11. There is no evidence in the Record to support Henkel's speculation that his meetings with Sydow "could just as easily be" "legitimate meetings between board members" as they could be "untoward meetings between co-conspirators." MFR13.[10] Henkel introduced no evidence showing he did not discuss defrauding the Investors when he met with Sydow. Thus, as the Opinion states, "Henkel did

---

[9]     *See Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014) (noting that "although physical presence in the forum is not a prerequisite to jurisdiction, physical entry into the State … is certainly a relevant contact").

[10]     This Record resembles that concerning the trade secret claim in *Moncrief* (where the record showed the meetings were alleged to have been in furtherance of the claim) and is distinct from those concerning the tortious interference claim in *Moncrief* and the conspiracy claim in *Hotel Partners v. Craig*, 993 S.W.2d 116 (Tex. App.—Dallas 1994, pet. denied) (where there were no allegations connecting the meetings to the conspiracy) (cited at MFR6).

not satisfy his burden to negate allegations that he participated in acts in furtherance of the conspiracy in Texas." Op.12-13.

Moreover, Henkel's intent concerning those meetings is irrelevant. As *Moncrief* made clear, the personal jurisdiction inquiry is concerned with "physical fact" rather than intent. 414 S.W.3d at 147. The defendants in *Moncrief* claimed that their intent in attending Texas meetings that resulted in their receipt of trade secrets was to discuss a matter unrelated to trade secrets and thus unrelated to the litigation. *Id.* at 153-54 & n.10. The court held that "[r]egardless of the defendants' subjective intent, their Texas contacts are sufficient to confer specific jurisdiction over the defendants as to the trade secrets claim." *Id.* at 147. The court explained:

> [T]he business contacts needed for specific personal jurisdiction over a nonresident defendant "are generally a matter of physical fact, while tort liability (especially misrepresentation cases) turns on what the parties thought, said, or intended. Far better that judges should limit their jurisdictional decisions to the former rather than involving themselves in trying the latter.

414 S.W.3d at 147 (quoting *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 791 (Tex. 2005)).[11]

---

[11]     The Opinion is similarly consistent with *D.H. Blair Inv. Banking Corp. v. Reardon*, 97 S.W.3d 269, 278 (Tex. App.—Houston [14th Dist.] 2002, pet. dism'd w.o.j.) and *Vosko v. Chase Manhattan Bank, N.A.*, 909 S.W.2d 95, 99 (Tex. App.—Houston [14th Dist.] 1995, writ denied) (cited at MFR4-5), neither of which suggests that a plaintiff must establish an **unlawful** overt act in the state as Henkel suggests.

The key physical fact here is Henkel's undisputed purposeful presence in Texas for meetings with Sydow that are alleged to be in furtherance of the conspiracy to defraud investors of a Texas-based company.[12] Whether the meetings were "legitimate meetings between board members" as Henkel only now contends, is a question to be addressed at the trial on the merits.

## C. Consistent with the fiduciary shield doctrine, the Opinion rests upon Henkel's purposeful contacts with Texas, not mere corporate board membership.

Henkel claims his relevant contacts are limited to his NC12 board service, so the Opinion is erroneous in holding that board membership, standing alone, is sufficient to subject Henkel to specific personal jurisdiction. MFR11. However, the Opinion correctly determined that one jurisdictionally significant contact was Henkel's board service, which "created 'continuing obligations' between himself and a Texas-based company, the formation of which is alleged to be at the center of the alleged fraudulent investment scheme."[13] But it also determined that his

---

[12]     Henkel also seems to ignore that the allegations are for conspiracy to defraud, suggesting that the Opinion erred because it failed to confine its analysis to a cause of action for fraud. MFR6. However, because the allegation here is for conspiracy, which is derivative of the underlying tort of fraud, the operative facts include **not only** the fraud itself, **but also** the conspiracy to defraud.

[13]     Henkel argues that the "'continuing obligations' concept" discussed in *Moncrief* is inapplicable here because the "concept is one that permits a defendant to face suit in the forum state *of the aggrieved resident*." MFR11. However, *Moncrief* referred to "continuing obligations" with citizens of the forum, not plaintiffs or aggrieved residents. The obligations just happened to be to plaintiffs in *Moncrief*. The court explained that the "analysis assesses the quality and nature of the contacts, not the quantity." *Moncrief*, 414 S.W.3d at 151. Here, the quality and nature of

meetings with Sydow were purposeful Texas contacts, all of which are substantially connected to the claims asserted against Henkel. [14] Moreover, Henkel's suggestion that the Opinion improperly bases personal jurisdiction on "legitimate board service" in violation of the fiduciary shield doctrine must fail because the fiduciary shield doctrine has no application to this case.

This Court has recognized that the fiduciary shield doctrine[15] applies **only** to assertions of general jurisdiction, not specific jurisdiction. *Wright v. Sage Eng'g, Inc.*, 137 S.W.3d 238, 250 (Tex. App.—Houston [1st Dist.] 2004, pet. denied). The Opinion correctly confines its analysis to whether the Record supports the exercise of specific jurisdiction, not general jurisdiction. Op.7. Thus, the fiduciary shield doctrine is inapplicable.

Henkel cites *Stull v. LaPlant*, 411 S.W.3d 129, 137-38 (Tex. App.—Dallas 2013, no pet.), for the proposition that the fiduciary shield doctrine can apply to a

---

the contacts confirm that Henkel established continuing obligations with NC12, a Texas resident, and that this action is substantially connected to those contacts.

[14] Henkel complains that the Opinion "gave weight" to allegations regarding Henkel's involvement in NC12's bankruptcy and service on the board of another Texas corporation. MFR1, 11 at n.3, 14. However, the Opinion mentions these facts only with reference to Henkel's credibility and the "fairness" part of the jurisdictional analysis and does not rely on them in determining whether Henkel's purposeful contacts with Texas were connected to the claims. Op.4-5, 14.

[15] "The fiduciary shield doctrine provides that corporate officers are not subject to jurisdiction in a foreign forum where their actions are taken in a representative capacity." *Brown v. Gen. Brick Sales Co., Inc.*, 39 S.W.3d 291, 297 (Tex. App.—Fort Worth 2001, no pet.), *cited in Wright*, 137 S.W.3d at 250. A plaintiff can defeat that protection by showing that the defendant was advancing his own interest or that he was an alter ego. *Id.*

11

specific jurisdictional analysis. MFR12. However, *Stull* does not support applying the doctrine here. While *Stull* rejected the "broad statement" that the doctrine had no application at all to specific jurisdiction, it agreed that that the doctrine does not apply "when a plaintiff claims the agent personally committed a tort and at least some of the agent's tortious conduct involved contacts with Texas." *Id.* at 137.

*Stull* explained that the "application of the fiduciary shield doctrine is determined by whether or not the corporate agent can be held personally liable under applicable law." 411 S.W.3d at 137. Accordingly, it applied the fiduciary shield doctrine to a contract claim where the individual defendants acted solely in their capacity as executives of the corporate defendant, and had no individual contractual obligation or liability.[16] Thus, even *Stull* would agree that the fiduciary shield doctrine "does not protect a corporate officer from specific personal jurisdiction as to intentional torts or fraudulent acts for which he may be held individually liable." *Wright*, 137 S.W.3d at 250. Therefore, the Opinion properly considered Henkel's service on the board of a Texas-based corporation as a relevant contact based upon his exposure to personal liability. *See* Op.11.

---

[16] The other opinions Henkel cites on this issue are similarly inapplicable. MFR12. *See Cadle v. Graubart*, 990 S.W.2d 469 (Tex. App.—Beaumont 1999, no pet.) (applying the fiduciary shield doctrine because the plaintiff had not stated a claim for individual liability); *Garner v. Furmanite Australia Pty., Ltd.,* 966 S.W.2d 798, 803 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (refusing to find general jurisdiction over subsidiary that was not the alter ego of the parent ); *Vosko*, 909 S.W.2d at 99 (refusing to find general jurisdiction over individual who was not the alter ego of the corporation).

12

**II.** **The Opinion follows *Moki Mac* in considering only Henkel's contacts that are substantially connected to the operative facts of the litigation.**

    **A.** ***Moki Mac* rejected the substantive relevance test and adopted the substantial connection test for the "arising from" prong of specific jurisdiction.**

Henkel argues throughout his Motion that the Opinion is wrong because it finds jurisdiction when there is not a sufficient relationship between his Texas contacts and the conspiracy claim alleged against him. In effect, he argues that the Opinion does not properly evaluate the "arising from" prong of the jurisdictional analysis and considers contacts unrelated to the claims against him. However, Henkel misconstrues the "arising from" analysis.

The Texas Supreme Court's opinion in *Moki Mac* controls the "arising from" analysis in Texas courts.[17] In that opinion, the court examined four different approaches to the analysis, and adopted the "substantial connection" test. "[F]or a nonresident defendant's forum contacts to support an exercise of specific jurisdiction, there must be a substantial connection between those contacts and the operative facts of the litigation." *Moki Mac*, 221 S.W.3d at 585.

Henkel's Motion never mentions the substantial connection test. Instead, Henkel suggests that the test is whether Henkel "conducted any activity in Texas

---

[17]     *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575-6 (Tex. 2007). As *Moki Mac* points out, "[t]he United States Supreme Court has provided relatively little guidance on the 'arise from or relate to' requirement." *Moki Mac*, 221 S.W.3d at 576. No subsequent opinion of either court has addressed the issue.

**actually connected**" to the claim, and elsewhere asserts that "specific jurisdiction analysis requires a reviewing court to look *only* at the conduct **pertinent** to the cause of action." MFRv, 2 (emphasis added). Henkel also claims that a fraud claim arises from Texas contacts only if the misrepresentation and the reliance occurred in Texas. MFR6, 8. Thus, he argues that that "the nature of a fraud claim forecloses [Henkel's] Texas meetings from having any bearing on the appropriate jurisdictional decision," suggesting that specific jurisdiction is appropriate only upon a finding that Henkel himself made a misrepresentation in Texas. MFR8. In effect, Henkel asks this Court to apply the "substantive relevance" test that was specifically rejected in *Moki Mac*.

Henkel suggests that *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789 (Tex. 2002), predating *Moki Mac* by five years, is the controlling authority, requiring that misrepresentation or reliance, elements of a fraud claim, occur in Texas. However, *BMC* does not elaborate on the "arising from" analysis. Instead, it focuses on the particular facts of the dispute (called "operative facts" in *Moki Mac*), which undeniably were centered in Europe.[18]

---

[18] The case concerned a Belgian plaintiff, employed in Belgium, who negotiated with other Belgians for employment with BMC, a Belgian corporation. BMC was the wholly-owned subsidiary of a Houston-based company, and the plaintiff alleged that his employment agreement was discussed between the Belgian BMC representatives when they were in Houston.

14

Nevertheless, because it seemingly requires that an element of the cause of action occur in Texas, the opinion appears to apply the "substantive relevance" test, which *Moki Mac* later rejected. The court in *Moki Mac* described the substantive-relevance approach as a structured, restrictive view of relatedness that "requires forum-related contacts to be substantively relevant, or even necessary, to proof of the claim." *Moki Mac*, 221 S.W.3d at 582. However, the court rejected such a "categorical approach" to jurisdiction as "run[ning] the danger of posing too narrow an inquiry." *Id.* at 583. The court explained:

> Although ostensibly imbued with a bright-line benefit, in practice it would require a court to delve into the merits to determine whether a jurisdictional fact is actually a legal cause of the injury. Moreover, ease of application should not overshadow the principal constitutional due-process inquiry, which is whether the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"

*Moki Mac*, 221 S.W.3d at 583 (citations omitted).

In fact, the claims against the non-resident defendant in *Moki Mac* included a misrepresentation claim. The Texas plaintiffs in *Moki Mac* alleged that the defendant made material misrepresentations in written materials sent to them in Texas, upon which they relied. *Moki Mac*, 221 S.W.3d at 576. Under Henkel's analysis of *BMC*, the court in *Moki Mac* should have found specific jurisdiction because the misrepresentation and reliance occurred in Texas. However, the court

15

determined there was no jurisdiction in *Moki Mac* because, despite the contacts' substantive relevance, they were not substantially connected to the claim. Instead of comparing the **elements of the claim** to the contacts, the court examined "the **operative facts** of the Druggs' suit" which the court found to "concern principally the guides' conduct of the hiking expedition and whether they exercised reasonable care." *Moki Mac*, 221 S.W.3d at 585.

The Opinion is consistent with *Moki Mac*, stating that the jurisdictional analysis focuses on the "relationship among the defendant, the forum, and the litigation, [to] determine whether a substantial connection exists between Henkel's contacts with Texas and the operative facts of the litigation." Op.8 (citing *Moki Mac*).

**B.      The purposeful contacts upon which the Opinion relies are substantially connected to the operative facts of the litigation.**

The Opinion also correctly applies the substantial connection test, concluding that Henkel's purposeful contacts were substantially connected to the operative facts of the litigation. Rather than address the "substantial connection" test, Henkel appears to count contacts, which he suggests are far fewer than those of the defendant in *Moki Mac*, and makes an emotional appeal, urging that *Moki Mac* was a far more compelling case as it was brought by Texas plaintiffs and involved the death of a child. MFR14-15.

But the plaintiff's relationship to the forum is not dispositive,[19] and as the Opinion notes, jurisdiction can result from a defendant's single purposeful act in the forum. Op.9. Both Moki Mac and Henkel had purposeful contacts in Texas, but only Henkel's were substantially connected to the claims asserted against him.

Here, the Investors asserted a claim against Henkel for conspiracy to defraud in connection with the Texas-based corporation of which Henkel was a director. The Opinion carefully delineates the elements of civil conspiracy, and correctly concludes that the operative facts are centered in Texas. Op.12-13. The operative facts concern the operations of a Texas-based company, meetings in Texas between the company's officers and directors, including Texas resident Sydow, and the value of the Texas-based company's securities. Therefore, Henkel's meetings in Texas with Sydow allegedly in furtherance of the fraud and his service as a member of the board of directors of the Texas-based company are substantially connected to the operative facts.

The court in *Moncrief* found that the defendants' alleged receipt of trade secrets in a Texas meeting was "the crux" of the misappropriation claim. *Moncrief*, 414 S.W.3d at 154. Here, Henkel's meetings are "the crux" of the conspiracy claim. "When coupled with allegations of a conspiracy," Henkel's meetings in

---

[19]    *See Walden*, 134 S. Ct. at 1122 (focusing on the defendant's contacts, ignoring the plaintiffs' state of residence, and refusing to allow "a plaintiff's contacts with the defendant and the forum to drive the jurisdictional analysis").

17

Texas "provide a nexus for the suit to be brought in a Texas court." Op.10.

Moreover, the Opinion correctly notes that additional evidence "connects Henkel to Texas and the allegations in the lawsuit." Op.11.

**Prayer**

We respectfully request that the Motion for Rehearing be denied.

Respectfully Submitted,

 /s/    Kelley M. Keller

Kelley M. Keller
Texas Bar No. 11198240
Tracey N. Ellison
State Bar No. 15054720
ELLISON & KELLER, P.C.
5120 Woodway Drive, Suite 6019
Houston, Texas 77056
Telephone: 713-266-8200
Facsimile: 713-266-8201
kkeller@ellison-keller.com

Kevin Dubose
Texas Bar No. 06150500
ALEXANDER, DUBOSE, JEFFERSON
   & TOWNSEND LLP
1844 Harvard Street
Houston, Texas 77008-4342
Telephone: 713-523-2358
Facsimile: 713-522-4553
kdubose@adjtlaw.com

Alexandra Albright
Texas Bar No. 21723500
ALEXANDER, DUBOSE, JEFFERSON
   & TOWNSEND LLP
515 Congress, Suite 2350
Telephone: 512-482-9300
Facsimile: 512-482-9303
aalbright@adjtlaw.com

*Attorneys for Appellees*

## Certificate of Service

I certify that this Response to Motion for Rehearing was served on the following attorneys of record by eservice on November 30, 2015.

Charles Eskridge
Emily M. Smith
Quinn Emanuel Urquhart & Sullivan, LLP
711 Louisiana Street, Suite 500
Houston, Texas 77002
charleseskridge@quinnemanuel.com
emilysmith@quinnemanuel.com

*Attorneys for Appellant*

   /s/   Kelley M. Keller   
Kelley M. Keller

19

## Certificate of Compliance

I certify that this brief complies with the typeface and word-count requirements set forth in the Texas Rules of Appellate Procedure. This brief has been prepared, using Microsoft Word, in 14-point Times New Roman for the body and 12-point Times New Roman for footnotes. This brief contains 4,238 words, as determined by the word count feature of Microsoft Word, excluding those portions exempted by TEX. R. APP. P. 9.4(i)(1).

 /s/    Kelley M. Keller
Kelley M. Keller